190 So.2d 777 (1966)
W.L. TANENBAUM, Petitioner,
v.
BISCAYNE OSTEOPATHIC HOSPITAL, INC., a Florida Corporation, Respondent.
No. 34384.
Supreme Court of Florida.
September 28, 1966.
Rehearing Denied October 26, 1966.
*778 F.E. Gotthardt, of Gotthardt, Christie & Shepard and Kenneth L. Ryskamp, Miami, for petitioner.
Robert M. Riddle, Miami, for respondent.
THOMAS, Justice.
The facts in this case are simple. W.L. Tanenbaum, the petitioner, is an osteopathic physician specializing in radiography. In September 1961 he removed from Allentown, Pennsylvania, to North Miami Beach where he became osteopathic radiologist at respondent's North Miami Beach hospital. The parties entered into an oral contract providing for his services for a period of five years terminable only after the expiration of that period and even then only upon 90 days written notice by either party. There was evidence that petitioner importuned respondent to execute a written agreement but this was never accomplished.
In April 1962 the respondent notified the petitioner that his services would be discontinued the first of the following July and in the next month petitioner filed his complaint for damages resulting from the respondent's action. Principal defense of the respondent, then defendant, was the Statute of Frauds, the relevant part of which provides, Sec. 725.01, that "[n]o action shall be brought * * * upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by him thereunto lawfully authorized."
So, as might have been expected, the respondent moved, at the end of plaintiff's case for a directed verdict in its favor. This was denied. The motion was repeated at the close of all testimony and evidence, and ruling upon it was reserved by the court. Then the jury returned a verdict for the plaintiff in the amount of $40 thousand. Later the respondent presented a motion for a judgment in accordance with the motion for directed verdict and the court granted it.
The trial judge found that the Statute of Frauds had been properly pleaded and that the contract was "within" the statute. He observed that the plaintiff, petitioner, had opposed the motion on the ground that the respondent was estopped from resorting to the statute. The judge rejected this view and entered judgment for the defendant, respondent, accordingly.
The controversy then went to the District Court of Appeal, Third District, where the appellant presented the lone question whether or not the Circuit Court had ruled properly that his claim was, as a matter of law, barred by the Statute of Frauds. That Court commented that the sole reason urged for the non-applicability of the Statute was the doctrine of "promissory estoppel" which the Court said did not appear in any of the Florida decisions. Such being the case the Court was of the opinion that great caution should be exercised "in the consideration of the advisability of ingrafting onto the law of this State a provision which may have the effect of nullifying the legislative will of the State as expressed by the inactment [sic] of the Statute of Frauds * * *."
*779 The District Court of Appeal referred to three decisions in which the doctrine of promissory estoppel had been recognized, Alaska Airlines, Inc. v. Stephenson, 15 Alaska 272, 217 F.2d 295; Fibreboard Products, Inc. v. Townsend, 9 Cir., 202 F.2d 180, and Seymour v. Oelrichs, 156 Cal. 782, 106 P. 88, and commented that no decision had been found indicating that the principle of promissory estoppel as related to the Statute of Frauds had been "favorably considered by any Florida court in a law action * *." We are unable to elaborate on this statement except to say that there have been brought to our attention two cases in which the doctrine had been mentioned, South Investment Corporation, et al. v. Norton, et al., Fla., 57 So.2d 1, and Southeastern Sales & Service Co. v. T.T. Watson, Inc., Fla. App., 172 So.2d 239. But in neither was the doctrine of promissory estoppel embraced.
The principle was also recognized in the Restatement of Contracts, § 90:
"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."
The language of the Statute of Frauds we have already quoted is quite clear and its origin and purpose were plainly stated in Yates v. Ball, 132 Fla. 132, 181 So. 341, as follows:
"The statute of frauds grew out of a purpose to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos. To accomplish this, the statute requires that all actions based on agreements for longer than one year must depend on a written statement or memorandum, signed by the party to be charged. The statute should be strictly construed to prevent the fraud it was designed to correct, and so long as it can be made to effectuate this purpose, courts should be reluctant to take cases from its protection." (Italics supplied.)
Doubtless because this is a matter of first impression and therefore involves the introduction into the law of this State a relatively novel concept, the case was sent here on a certificate under Sec. 4(2), Article V of the Constitution, F.S.A. The question that emerges for resolution by us is whether or not we will adopt by judicial action the doctrine of promissory estoppel as a sort of counteraction to the legislatively created Statute of Frauds. This we decline to do.
We agree with the conclusions of the Circuit Court and District Court of Appeal in rejecting the so-called doctrine of promissory estoppel and especially with the observation of the latter with reference to embracing it in view of the legislative prerogative of dealing with matters of this nature.
The petitioner had but to follow the provisions of the Statute of Frauds to secure his rights under the arrangement with the respondent instead of taking the position, rather tardily that they did not apply to him. Thirty-three years have passed since the Restatement we have quoted was adopted and there have been about 15 intervening sessions of the legislature at which the contents of Sec. 90 of the Restatement could have been incorporated into the act yet we know of no such effort or accomplishment.
Having undertaken to answer the question certified, the writ of certiorari which brought it here is discharged.
THORNAL, C.J., and DREW and CALDWELL, JJ., concur.
ERVIN, J., dissents with opinion.
O'CONNELL, J., dissents and concurs with ERVIN, J.
*780 ERVIN, Justice (dissenting).
Prior to his death on August 3, 1966, Justice T. Frank Hobson (Ret.) prepared a dissenting opinion in this case which was circulated to the Justices; to it I agreed. I am adopting Justice Hobson's opinion to express my dissent. It reads as follows:
"Although I am compelled to dissent I do so with all appropriate respect for the erudite veteran jurist who prepared the majority opinion and for the learned members of the panel who have concurred in his view.
"There are several reasons why I cannot agree to the majority opinion or the conclusion reached therein.
"In the first place I cannot accept the statement: `There was evidence that petitioner importuned respondent to execute a written agreement but this was never accomplished' as a complete picture, limned by the record before us, of just what transpired between petitioner and the respondent's authorized spokesman (Dr. Feldman) with reference to a written contract of employment.
"It is apparently true that petitioner `importuned' respondent repeatedly to execute the written contract after he had had reason to, and did, suspect that respondent did not intend to fulfill its promise to execute and deliver the written five-year contract. This is the promise upon which petitioner relies for invocation of the doctrine of `promissory estoppel.' The majority opinion does not pointedly, if at all, so declare.
"Issues were created by the pleadings upon every element of `promissory estoppel.' Petitioner admitted that he, at the request of respondent, secured a form contract from the American Osteopathic Association, filled it in and sent it to Dr. Feldman who was chairman of the X-Ray Committee. Dr. Tanenbaum testified that he had a conference in Miami with Dr. Feldman in connection with the proposed written five-year contract and that they had `a meeting of the minds' with reference thereto after a lengthy discussion concerning certain details. He further testified that after this `meeting of the minds' Dr. Feldman called him over long distance and told him, in essence, that everything would be as they had agreed and to come on down to Miami, which he did after giving the required notice to the hospital where he was working in Allentown, Pennsylvania. He sold his home in Pennsylvania at a loss and purchased a home in Miami which, after he was `fired' without any `question of his competency,' he also sold at a loss. He stated from the witness stand that he had been able to secure employment after a period of time at a hospital in Detroit, Michigan, but that he had made on an average $800 less per month than he was making under his contract while working for the respondent.
"Dr. Feldman testified that there never was `a meeting of the minds' with reference to a written contract of employment for a period of five years, yet he admitted that it was he, as authorized Chairman of the X-Ray Committee, who suggested that the five year period of employment covenant be included in the written contract under discussion. He also denied from the witness stand that Dr. Tanenbaum had ever been promised a five-year written contract.
"To my mind it is quite significant that the jury rendered a verdict of $40,000.00 in favor of Dr. Tanenbaum. At the time petitioner was discharged by the respondent the alleged five-year written contract had four years and three months yet to run. A loss of $800 per month as testified to by petitioner for a period of four years and three months would amount to $40,800.00. It thus appears that the jury believed petitioner's testimony rather than that portion of Dr. Feldman's testimony which was in conflict therewith.
"Secondarily it is more than difficult for me to accept and agree to the statement in *781 the majority opinion that the question before the court `is a matter of first impression and therefore involves the introduction into the law of this State a relatively novel concept, * * *.' (Italics supplied.) It appears to me that this so-called doctrine of `promissory estoppel' is nothing more nor less than an identical twin of the exception to the Statute of Frauds, under certain circumstances, with reference to an oral contract for the purchase and sale of real property. As far back as the year 1877 the Supreme Court of Florida discussed, adopted and, if you please, `ingrafted' upon the Statute of Frauds the exception thereto, that if under an oral contract for the purchase of real property the vendee is placed in possession, pays part or all of the consideration agreed upon (and especially in the event the vendee makes valuable improvements upon the property) the Statute of Frauds will not be held to defeat his right to enforcement of conveyance of title to him of said real property.
"The 1877 case to which I refer is Tate v. Jones, 16 Florida Reports, 216. In Tate we held that payment of the purchase money coupled with delivery of possession constituted such part performance that the seller was estopped from insisting that the agreement was not signed, could not plead the Statute of Frauds as a defense and specific performance of the agreement was ordered. The Supreme Court of Florida has many times since 1877 reaffirmed this exception to the Statute of Frauds, but I do not find that the legislature has written it into, or ingrafted it upon, F.S. Chapter 725, F.S.A. The primary reason given for the adoption and invocation of this exception is that said statute should not be permitted to be used as an instrument of fraud.
"So it is with the doctrine of promissory estoppel. Each is a bar or estoppel and they have in common the same salutary, ultimate purpose. I can discern no difference between preventing the use of the Statute of Frauds as an instrument of fraud and invoking promissory estoppel in the event `injustice can be avoided only by enforcement of the promise.'
"If injustice will obtain unless the promise be enforced, then the Statute of Frauds if permitted as a defense would indeed become an instrument of fraud. We so stated in Cottages Miami Beach v. Wegman, Fla., 57 So.2d 439. Although we did not in Wegman use the expression `promissory estoppel' the underlying principle of such doctrine was the real basis of our decision. In that case we said: `Moreover, the evidence in this case convinces us that had the Chancellor refused equitable relief such action would have been tantamount to countenancing an injustice amounting to a fraud upon appellee.'
"It is true that all the cases which I have studied which deal with any principle akin to promissory estoppel have sounded in equity. This fact does not disturb me because long ago the Supreme Court of Florida approved the use of an equitable plea by a defendant in a common law action. There can therefore be no logical or reasonable basis for denying to a plaintiff in a common law action the right to present `as a sort of counteraction' to the Statute of Frauds the `counterpart' of the exception to said Statute with reference to oral contracts for the purchase and sale of real property, to-wit: `the doctrine of promissory estoppel.'
"I agree `that great caution should be exercised "in the consideration of the advisability of ingrafting onto the law of this State a provision which may have the effect of nullifying the legislative will of the State as expressed by the inactment [sic] of the Statute of Frauds" * * *.' (Italics supplied.) However the Supreme Court of Florida without hesitation ingrafted onto the statutory law the exception to the Statute of Frauds with reference to an oral contract for the purchase and sale of real property without apparent hesitation and has consistently stood by its ingraftment, the novel idea of legislative `prerogative' to the contrary notwithstanding.
*782 "This brings me to my final point of cleavage which is that I cannot subscribe to the pronouncement that the acceptance and ingraftment of the rule of promissory estoppel is a legislative `prerogative.' The Supreme Court of Florida obviously in 1877, in the case of Tate v. Jones, did not concern itself with the legislature's `prior, peculiar, or exclusive right or privilege' and has not heretofore departed from its now declared[1] usurpation of such prerogative. It must be clear to the reader that I do not believe the legislature ever possessed a prerogative in the usual and common usage sense of the word. This is the sense in which it is undoubtedly used in the majority opinion, otherwise the use of the word prerogative is pointless.
"Moreover it has always been my understanding that the adoption or `embracement' of any legal rule, principle or doctrine is more of a judicial prerogative than a legislative one. Of course I realize that the legislature has the right and the privilege to ingraft upon the Statute of Frauds any exception which it deems appropriate or advisable. But this is not to say that such right or privilege is `prior, peculiar or exclusive.'
"The important if not the controlling query presently before us is whether this Court will recognize and adopt the doctrine of `promissory estoppel' in this `made to order case' and if not, why not? The lame excuse of legislative prerogative is not sufficiently compulsive to cause me to agree to reject, apparently for all time to come insofar as the Supreme Court of Florida is concerned, the doctrine of `promissory estoppel' and thus permit the otherwise salutary Statute of Frauds to be used as an instrument of fraud.
"The decision of the DCA, Third District, was 2-1. I agree with the dissent registered by the then Chief Judge Barkdull. If in truth and in fact petitioner was promised a five-year written contract and in reliance upon said promise in good faith acted upon the strength thereof to his detriment certainly an injustice to him can be avoided only by invocation of the doctrine of `promissory estoppel.'
"The jury had squarely before it for its consideration and determination the all-important question whether Dr. Tanenbaum had been promised a five-year written contract which should be reasonably expected to induce action of a definite and substantial character on his part and which did induce such action. Dr. Tanenbaum in his complaint alleged, and on the witness stand testified to, every element of `promissory estoppel' and the jury obviously accepted his testimony as true. No doubt the jurors took cognizance of the clear inferences deducible from Dr. Feldman's testimony and the documentary evidence, which inferences support the contentions of, and the position taken by, Dr. Tanenbaum.
"I would grant the petition for a writ of certiorari, quash the decision of the District Court of Appeal, Third District, with directions that this case be remanded to the Circuit Court for rendition of an order by that court reinstating the final judgment which was entered pursuant to the verdict of the jury."
O'CONNELL, J., concurs.
NOTES
[1] In the majority opinion herein.