The PRUDENTIAL INSURANCE COM·
PANY OF AMERICA, Plaintiff-
Appellee,

v.

William D. (Bill) CLARK and Margaret
Clark, Defendants-Appellants.

No. 71–2406
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 9, 1972.

* ▮ Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y., 431 F.2d 409, Part I (5th Cir. 1970).

Mike Krasny, Storms, Pappas & Krasny, P.A., Melbourne, Fla., for defendants-appellants.

J. Thomas Gurney, Jr., Terry S. Freedman, of Gurney, Gurney & Handley, P.A., Orlando, Fla., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This appeal requires that we review a case tried to a jury on disputed evidence. The court refused to enter judgment in accordance with the jury's answers to specific issues under Fed.R. Civ.P. 49(a), because it analyzed the effect of Florida's legislative repeal of the doctrine of voluntary payment to equal the abolition of the defense of waiver. However, we find in other legal fictions more compelling support for the verdict and reverse. We will consider the facts in the light most favorable to the jury's findings.

Steve Clark (Steve), a young single man residing with his parents, who are the defendants and appellants here, enlisted in the Marine Corps in January 1966 and thereafter purchased a 10,000 dollar life insurance policy with the World Service Life Insurance Company (World Life). This policy had no war risk and aviation exclusion clauses. In late 1966, Steve was contacted by Robert Brumell, an agent employed by Prudential Insurance Company of America (Prudential) to sell its insurance policies, who urged Steve to drop the World Life policy and to permit Prudential to replace it with one of its life insurance policies. Brumell advised Steve that he could obtain a 10,000 dollar policy similar to the World Life policy without any limiting war risk or aviation exclusion clause. An application was completed and mailed to Prudential for approval. Steve, meanwhile, in reliance upon Brumell's representation, dropped his World Life policy. Subsequently, Prudential mailed the application back to Brumell in order to secure some additional, minor information. The jury found that Prudential issued this initial 10,000 dollar policy when the application was returned to Brumell. The policy, however, was never delivered to Steve because when Brumell received the policy and the request for additional information Steve had already left for Marine training in California. Brumell contacted a Prudential agent in California and asked him to go out to the Marine base and secure the requested information from Steve. The California agent balked because he wanted to share in the commission which would be paid to the writing agent. It took six weeks before Brumell and Prudential's California agent could reach an agreement as to how they would divide these funds. By this time, Steve had been shipped to Viet Nam. We have no way of knowing the contents of that first Prudential policy. Presumably it was destroyed pursuant to Prudential's internal procedure of eliminating all records over thirteen months old.

A year later, in early May 1968, Steve returned from Viet Nam and was again contacted by Brumell. Brumell told Steve what had happened and requested that he submit another application. This second application also sought a 10,000 dollar policy without the war risk and aviation exclusion clauses. Brumell explained that he thought it would be possible to obtain such a policy in view of the prior events. Another application was completed and, along with Steve's prepaid premium, mailed to Prudential. The jury found that Brumell wrote an accompanying letter asking that the policy be issued without the exclusion clauses. On May 20, 1968, Steve returned to Viet Nam. Thereafter the policy issued effective June 1, but unfortunately, Prudential did not comply with Brumell's letter request. However, Steve never had a chance to protest. The policy was not delivered to him, and no one told him that it contained war risk and aviation exclusion clauses. Brumell either had no chance to communicate this information, or remained silent in the

hope that these exclusions would not become material; but this was not to be.

On July 28, Steve was killed in Viet Nam when his helicopter crashed and burned. Thereafter, Brumell assisted the defendants in preparing a claim against Prudential. He also wrote an accompanying letter asking Prudential to pay the claim despite the fact that the current policy contained the exclusion clauses. He urged this course of action in view of the above described circumstances, the position of the defendants in the community, the impairment of Prudential's image, and the possibility of legal action being taken against Prudential.

The claim was submitted to Raymond Thomas, the Chief Claims Consultant, who had the ultimate authority for approving or rejecting claims. Thomas approved the claim, and 10,000 dollars was disbursed to the defendants. The policy was then sent to the home office of Prudential in New Jersey for actuarial studies and statistical analyses but not for further review. An employee in the actuarial office noticed the exclusion clauses and Thomas was notified that the claim should not have been paid. Demand was then made upon the defendants for the return of the money. When they refused, this suit ensued.

■ Thomas testified that he paid this claim through oversight and mistake. The jury, however, refused to credit this testimony because it found that Prudential, by paying the face amount of the policy, intentionally waived the exclusionary clauses. Since the instructions to the jury correctly defined waiver as the voluntary, intentional relinquishment of a known right, and since Thomas was the ultimate authority for approving claims, it follows that the jury must have found that Thomas was cognizant of the exclusion clauses and

Steve's war death, but deliberately and knowingly relinquished Prudential's right to rely upon those clauses and paid the claim, not under the policy, but to honor the commitments made to the deceased by the company's representative. There is abundant evidence to support this finding of the jury. First of all, Prudential knew what Brumell knew. He was the company's representative. His "twisting" to further Prudential's business caused Steve to drop the other policy and to prepay a premium to Prudential. Second, the claims department had Brumell's letter detailing all of the circumstances. Their correspondence discloses that they in fact knowingly dealt with this claim as one resulting from the operation of a military aircraft, because they would not accept the burial permit tendered by Steve's parents but insisted on the Marine Corps' Official Casualty Report listing the death. This report showed he met his death as a crew member of a helicopter on a Marine combat supply mission in Viet Nam. Third, Thomas testified that he personally knew a war death was involved when he reviewed the claim. Fourth, a notice that the policy contained the exclusion clauses is conspicuously stamped across the face of the policy.

■ The district judge refused to credit the jury finding of intentional waiver because he reasoned that this defense was precluded by Fla.Stat.Ann. § 725.04 (1969).[1] This statute negates the common law defense of voluntary payment. The district court believed that the defenses of intentional waiver and voluntary payment were one and the same, and thus that the statute proscribed the waiver defense as well. Apparently, the judge applied the rationale that the defendant's position was based upon nothing more than a waiver of an

1. When a suit is instituted by a party to a contract to recover a payment made pursuant to the contract and by the terms of the contract there was no enforceable obligation to make the payment or the making of the payment was excused, the defense of voluntary payment may not be interposed by the person receiving payment to defeat recovery of the payment.

unenforceable obligation. This action is understandable, in light of the fact that courts have long been reluctant to utilize waiver and estoppel doctrines in cases involving claims on insurance policies, lest it create a coverage neither the insurer nor the insured ever agreed would apply. Contracts should not be court-evolved from action or non-action that is not expressive of a desire to be contractually bound.[2]

■■■■ However, Florida cases that have been cited to us and that we have found in this area, discuss either estoppel *in pais* or "crackfilling" estoppel— the use of estoppel to achieve just results when no other theory can be found. No Florida case has directly considered the applicability of the Restatement of Contracts § 90 (1932).[3] The doctrine of Section 90 is known as promissory estoppel. Promissory estoppel, as a contractual precept, has added a new reflection to the kaleidoscope of contract law. Its stated purpose is to bridge the lack of consideration gap by using the detriment of the promisee to supply the consideration necessary to enforce the promise. *See* Travelers Indemnity Co. v. Holman, 330 F.2d 142, 151 (5th Cir. 1964); 17 Am.Jur.2d Contracts § 89 (1964); *see also* A. Corbin, Corbin on Contracts 279 (1 vol. ed. 1952). Promissory estoppel does not depend upon conduct which may be contractually equivocal, as do the waiver and other estoppel doctrines above discussed. It requires affirmative action indicative of a desire to be contractually bound. In the case at bar, that affirmative action manifested itself when the agent, Brumell, promised to obtain a policy without the exclusion clauses and thereby induced Steve to drop his other policy in reliance upon that promise. *See* 16A J. Appleman, *supra* at 329–30.

■■■ Also, the non-contract theory of ratification is fully applicable here. When a principal, with full knowledge of the facts, chooses to approve and adopt an unauthorized act of an agent, he is bound by that action as fully as if it had been pre-authorized. *See* A. Corbin, *supra* at 320–21; 17 Am.Jur.2d Contracts § 7 (1964). Assuming *arguendo* that Brumell's promise to obtain a policy of insurance without war risk or aviation exclusion clauses was unauthorized, the act of payment by Prudential constituted a ratification of the agent's promise to obtain the form of policy the deceased applied for rather than the one actually issued. Certainly the jury could have found and did find that Prudential was fully cognizant of the facts and circumstances involved contemporaneously with its payment. *See generally* 16 J. Appleman, Insurance Law and Practice §§ 8766–67 (1968); 43 Am.Jur.2d Insurance § 163 (1969).[4] Indeed, Prudential not only paid the defendants in accordance with Brumell's representations but, in calculating the amount of their debt to them, deducted a premium to cover the month of July 1968, which had not yet been paid to them by Steve's Marine Corps allotment.[5]

2. Specifically, the concern is that insurance companies will be subjected to loss for risks not contemplated by either party and for which no premium has been paid. Annot., 1 A.L.R.3d 1144 (1965).

3. A promise which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

4. For a discussion of the doctrine of ratification in Florida, *see* Ball v. Yates, 158 Fla. 521, 29 So.2d 729 (1947); Branford State Bank v. Howell Co., 88 Fla. 493, 102 So. 649 (1924); Town of Madison v. Newsome, 39 Fla. 149, 22 So. 270 (1897).

5. The only inconsistent action in recognizing that the policy as applied for should have been issued and was in effect is that Prudential did not pay the additional 10,000 dollar amount provided for in its policy for accidental death. This feature was applied for and was in fact included in the policy issued by Prudential.

Prudential argues that under no theory may this Court take cognizance of the agent's promise and its inequitable conduct because of the Florida rule that any matters transpiring prior to or contemporaneous with the signing of an application for insurance are waived or merged into the application. 18 Fla.Jur. Insurance § 411(1971); 43 Am.Jur.2d Insurance § 208 (1969). The rule is nothing more than an embodiment of the parol evidence rule. *See* 18A Fla.Jur. Insurance §§ 1010–14 (1971). This argument highlights the basic error of Prudential's position in the court below and here. The jury's verdict found that Prudential did not part with its monies because of a mistaken supposition that they were owed on the policy of insurance it issued to Steve. Rather, this verdict recognized a duty of Prudential, dehors the writing, to act in an honorable and upright way in accordance with its agent's promise. Thus, application of promissory estoppel in no way trammels upon the parol evidence rule. Involved here is a separate enforceable promise and not a variance or modification of the terms of the policy. Additionally, Prudential's act of payment, which ratified its agent's commitment, and thereby recognized its duty to honor this action which had enriched the company and misled Steve to drop the World Life policy to the detriment of his beneficiaries, could not have been merged into the document since it did not occur until after the instrument was in being. The Florida "merger" rule is wholly inapplicable to either legalism which would support the jury's verdict.

The judgment of the court below is reversed and the cause is remanded with directions to enter judgment on the jury verdict for the defendants, and to include therein an award for attorneys' fees pursuant to Fla.Stat.Ann. § 627.0127 (Supp.1971).

Reversed and remanded.