290 So.2d 484 (1974)
MOUNT SINAI HOSPITAL OF GREATER MIAMI, INC., a Florida Corporation Not for Profit, Petitioner,
v.
Gladys B. JORDAN et al., Respondents.
No. 43696.
Supreme Court of Florida.
January 31, 1974.
Rehearing Denied March 20, 1974.
*485 Mallory H. Horton, Horton & Perse, Miami, and Lloyd L. Ruskin, Miami Beach, for petitioner.
Davis W. Duke, Jr., McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, for respondents.
Joe N. Unger, Miami Beach, for amicus curiae, The Greater Miami Jewish Federation.
Woodrow M. Melvin, Jr., and Mark V. Silverio, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, for amicus curiae, University of Miami.
McCAIN, Justice.
We have for review a decision of the Third District Court of Appeal which passed upon a question certified by that court to be of great public interest. We have jurisdiction pursuant to Art. V, § 3(b)(3), Constitution of Florida, F.S.A.
The salient facts establish that Harry M. Burt executed two pledges of $50,000.00 each in 1968. These pledges were delivered to the petitioner and provided in pertinent part:
"In consideration of and to induce the subscriptions of others, I (We) promise to pay to Mount Sinai Hospital of Greater Miami, Inc. or order the sum of Fifty Thousand and no/100 dollars $5,000.00 payable herewith: Balance in nine equal annual installments commencing on January [sic] 1 of... ."
Mr. Burt made payments totalling $20,000.00, which were applied equally to the two pledges and upon his death on November 18, 1969, there remained an unpaid balance of $80,000.00. Upon Mr. Burt's death, the petitioner filed a claim for the unpaid balance of the pledges against his estate. The respondents, as executors, objected to this claim. On the basis of these facts, the trial court held in favor of the charities and the respondents appealed.
There being no claim that the petitioner had suffered any material detriment or that any substantial liability had been incurred in reliance upon the subscriptions, the District Court proceeded to reverse and answered negatively the question certified to this Court. That question is:
"[W]hether the recitation in a charitable pledge that it is given in consideration *486 of and to induce the subscription of others constitutes consideration rendering it enforceable by the promisee against the promisor, in the absence of any reliant action thereon by the promisee such as would create promissory estoppel."
This question has not been before the courts of this State, so, to answer the question, the District Court has adequately reviewed the various approaches utilized in other jurisdictions and we will not restate that survey. The question restated is, whether in the absence of a showing of reliant action on the part of the promisee, is a pledge binding where the only evidence of consideration is to induce the subscription of others? Certainly there is a strong public policy supporting either position: the guarantee of continued economic support for charitable institutions versus the possible deleterious effect upon the decedent's estate. We are not unmindful of these contravening interests.
The scope of charitable pledges is as broad as human imagination and certainly there is no attempt by this Court to draw guidelines encompassing the breadth of creativity but rather to answer the specific questions raised.
A mere gratuitous promise of a future gift, lacking consideration, is simply unenforceable as a nudum pactum. When the gratuitous promise is coupled with an inducement for others to subscribe, the promise is no longer void on its face. This is the situation in this case. The pledge specifically recites that the subscription is made "[in] consideration ... to induce the subscriptions of others, ..."
The District Court was eminently correct when it recited the law that:
"For the doctrine of promissory estoppel to be applicable, the promisor must make a promise which he should reasonably expect to induce action or forbearance of a substantial character on the part of the promisee, ..."
Therefore, in order for a pledge to survive the death of the donor and be considered a valid claim against the estate, two elements must coincidentally exist. First, the document stating the conditions of the pledge must recite with particularity the specific purpose for which the funds are to be used. It would, for example, be insufficient if the pledge designated the general operating fund. The rationale for such a decision is obvious. While the donor is alive, he has the opportunity to monitor the use of the pledged funds and, to some extent, manifest his intent as to their proper disposition. However, upon his death, and in the absence of an express written intention, the donee would have unfettered discretion as to the expenditures of these pledged monies and could spend it in a manner which might have offended the donor had he still been alive. Therefore, the donative intent as to the specific material plan, for example, for the establishment of an engineering school as in Rouff v. Washington & Lee University, 48 S.W.2d 483 (Tex.Civ.App. 1932), must be made an integral part of the pledge instrument, limiting the exercise of discretion by the donee within the boundaries set forth by the instrument.
Further justification for such a position is unnecessary however in order to consider other rationales. While the donor is alive, he undoubtedly has a viable income from which he has pledged funds. Upon his death this income may stop, being derived from his actual management or personal service associated with his enterprises or job. Nevertheless the businesses of the decedent must be terminated upon his death unless continued as provided by Fla. Stat. § 733.08, F.S.A. (1971). Therefore unless the donor has made specific provision for the maintenance of a fund or source of funds for the continued payment of the pledge, this debt if enforceable could be a material burden upon the decedent's estate. Clearly then by requiring the donor to recite with particularity the specific purpose for which the funds are intended, he should then consider from *487 which source he intends to meet this obligation in the event of his premature death.
Secondly, the donee must affirmatively show actual reliance of a substantial character in furtherance of the specified purpose set forth in the pledge instrument before the claim may be honored by the estate. Text writers have expressed a similar view:
"... The view most commonly held is that such a subscription is an offer to contract which becomes binding as soon as the work towards which the subscription was promised has been done or begun, or liability incurred in regard to such work on the faith of the subscription.
"Since the subscription in its inception is regarded as an offer, until the work has been done or liability incurred, the subscription is revokable by the death, insanity, or otherwise." 1 Williston on Contracts, Sec. 116, pp. 250-51 (1st ed. 1920).
In the light of this pronouncement we must view the facts in this case to see if the doctrine of promissory estoppel should be applied to enforce the pledge against the estate of the donor.
A review of the record reveals that the pledge in question was not made for any specified purpose, clearly was not used to induce others to subscribe and the Hospital undertook no work in reliance upon Burt's subscription.
The District Court correctly interpreted the facts when it stated:
"Neither can the appellee find solace in the doctrine of promissory estoppel. The record is devoid of any evidence that the promisee was induced in reliance upon decedent's promise to take any substantial action, or to forego any material right, so that an injustice could only be avoided by applying this equitable doctrine. Southeastern Sales and Service Co. v. T.T. Watson, Inc., 172 So.2d 239, 241 (2 D.C.A.Fla. 1965); Restatement of Contracts, Sec. 90.
"Courts should act with restraint in respect to the public policy arguments endeavoring to sustain a mere charitable subscription. To ascribe consideration where there is none, or to adopt any other theory which affords charities a different legal rationale than other entities, is to approve fiction."
For the reasons set out above, the decision of the District Court of Appeal is affirmed.
It is so ordered.
CARLTON, C.J., and ROBERTS and BOYD, JJ., concur.
ERVIN, J., dissents.