E. C. ALLEN, Plaintiff-Appellee,

v.

A. G. EDWARDS & SONS, INC., Defendant-Appellant.

No. 77–2052.

United States Court of Appeals, Fifth Circuit.

Nov. 7, 1979.

Rehearing Denied Dec. 6, 1979.

Arthur L. Smith, Richard P. Sher, St. Louis, Mo., J. Robert McClure, Jr., Tallahassee, Fla., for defendant-appellant.

John C. Cooper, Tallahassee, Fla., for plaintiff-appellee.

Before COLEMAN, RONEY and FAY, Circuit Judges.

FAY, Circuit Judge:

This appeal arises from a $23,210 final judgment for appellee entered pursuant to a jury verdict by the District Court for the Northern District of Florida. The controversy in this diversity action springs from appellant's purchase of stock to cover potential losses from appellee's "short sale" stock transaction, contravening an oral promise by the manager of appellant's local branch that the company would take no immediate action. The pivotal issue presented for review is whether the doctrine of promissory estoppel provides a legitimate basis for appellee's recovery of losses accruing from appellant's purchase of stock. We agree with the trial court that, when the statute of frauds is not involved, promissory estoppel remains viable in Florida. Accordingly, we affirm.

Appellant is a nationwide stockbroker with its principal office in St. Louis, Missouri, and a branch office in Tallahassee, Florida. On December 13, 1974, appellee telephoned a broker at that branch office and asked him to execute for him a short sale of 2,000 shares of American Agronomics Corporation stock, which is traded on the American Stock Exchange. On December 16, 1974, appellant effected the requested transaction, selling 1,000 shares at $9.125 per share and 1,000 shares at $9.25 per share, and retaining the proceeds.

A short sale of stock reverses the ordinary sequence of events in a securities transaction: the sale of the stock precedes its purchase. Anticipating a drop in the price of certain stock, an investor who sells short hopes to profit by selling borrowed stock at today's price and buying later at a lower price to replace that stock. Stockbrokers serve to locate those who will lend their stock to the investor, and often borrow shares of the stock in their own names on the investor's behalf. Because of the risk that the price of the borrowed stock will rise rather than fall, a broker in a short sale transaction generally reserves the right to buy stock at his discretion, to prevent losses to the investor and to himself should the lender recall his stock while the investor is in a disadvantageous position. Alternatively, if the price rises the broker may allow the investor to remain in a short position, provided he supplies additional "margin," or collateral, over and above the initial margin paid pursuant to government regulations, pertinent exchange rules, and brokerage contract terms.

In this case, appellee on December 16, 1974, signed a written "Customer's Agreement" which granted appellant broad discretion to buy stock or to demand further collateral. This agreement further provided that neither the reservation of that discretion nor any other provision in the agreement could be waived or modified absent a writing signed by a duly authorized officer of appellant's company.

On December 19, 1974, appellee placed with appellant an initial margin of $18,-487.10, an amount equivalent to the full sales price of the borrowed stock. Subsequently, a rise in the price of American Agronomics stock led appellant to demand additional collateral from appellee if he wished to remain in a short position on the stock. Deeming his cash collateral adequate security for appellant, appellee on December 31, 1974, called Mark Robinton, manager of appellant's local branch, to verify the accuracy of the margin call. Robinton, who had no personal knowledge of the state of appellee's account, offered to have someone at appellant's principal office call appellee to confirm the request for additional collateral. Appellee, however, had a pressing out-of-town engagement which foreclosed his waiting for a telephone call, so the manager verbally agreed to delay enforcement of the margin call until appellee returned to Tallahassee on January 2, 1975.

Within a few hours, however, rising prices in American Agronomics stock induced appellant's principal office to buy a sufficient number of shares to liquidate appellee's short position, at prices ranging from $18 to $18.25 per share. Later that same day, American Agronomics stock was suspended from trading by the American Stock Exchange and by the Securities and Exchange Commission. When trading in the stock reopened in June, 1975, prices per share ranged from $4.25 to $7.75. Appellee claims as damages the difference between the unauthorized purchase price and the price at which the stock reopened in June.

Although they dispute whether the facts create an estoppel, the parties have no quarrel with the trial court's ruling that Florida law governs application of that equitable doctrine. The trial judge instructed the jury on both equitable and promissory estoppel as bases for recovery. We cannot say from the record that the evidence, considered in the light most favorable to appellee, was insufficient to show the elements of an equitable estoppel, as enumerated in *Robertson v. Robertson*, 61 So.2d 499, 503 (Fla.1952). *See Guffey v. Borden, Inc.*, 595 F.2d 1111 (5th Cir. 1979); *Greyhound Corp. v. Dewey*, 240 F.2d 899 (5th Cir. 1959). Because the trial judge also instructed the jury on the theory of promissory estoppel, however, we must consider whether the facts and law support appellee's recovery under that doctrine. Because no Florida court has clearly delineated the scope of promissory estoppel, we must make an *Erie* guess as to how the Supreme Court of Florida would apply that doctrine. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Benante v. Allstate Insurance Co.*, 477 F.2d 553 (5th Cir. 1973).

Although the Supreme Court of Florida had previously recognized the doctrine of promissory estoppel in *South Investment Corp. v. Norton*, 57 So.2d 1 (Fla.1952), the court in *Tanenbaum v. Biscayne Osteopathic Hospital, Inc.*, 190 So.2d 777 (Fla.1966), refused to adopt the doctrine as a judicial "counteraction to the legislatively created Statute of Frauds." In *Tanenbaum*, a physician sued a hospital for breach of an oral employment contract. Against the hospital's assertion of a statute of frauds defense, the physician counterposed a claim of promissory estoppel. The court denied relief, rejecting the proposed basis for recovery in broad terms. The factual context and the court's discussion, however, indicate that the court limited abolition of the doctrine to cases invoking the state's statute of frauds.

Subsequent cases support this interpretation of *Tanenbaum*. Intermediate appellate courts in Florida have made promissory estoppel a successful basis for recovery in cases not involving the statute of frauds. In *Elgin National Industries, Inc. v. Howard Industries, Inc.*, 264 So.2d 440 (Fla. 3d DCA 1972), the court affirmed a grant of specific performance of a real estate sales contract, when the vendee had spent money in reliance on the vendor's promise to leave the purchase option open. Similarly, in *Perry Publications, Inc. v. Bankers Life and Casualty Co.*, 246 So.2d 604 (Fla. 4th DCA 1971), the court affirmed a promissory estoppel judgment for appellee, who sued to recover the value of unused advertising

credit which appellant had extended past the credit's original expiration date. *See also In re Estate of Ingram*, 302 So.2d 204 (Fla. 2d DCA 1974); *Keller v. Penovich*, 262 So.2d 243 (Fla. 4th DCA 1972).

We are bound by these recognitions of promissory estoppel, absent indication by Florida's highest court that the decisions do not reflect the law of the state. *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *Six Companies of California v. Joint Highway District*, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114 (1940); *Stoner v. New York Life Insurance Co.*, 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940). The only recent Supreme Court of Florida decision mentioning promissory estoppel suggests that the doctrine has vitality when the state's statute of frauds is inapplicable. In *Mount Sinai Hospital of Greater Miami, Inc. v. Jordan*, 290 So.2d 484 (Fla.1974), the court considered the applicability of promissory estoppel, in an action by a charitable institution against executors of the estate of a deceased pledgor. The court dealt with the doctrine as a legitimate source of recovery, but, finding no detrimental reliance by the institution, refused to enforce the pledge.

In accordance with these cases, we recognize the doctrine of promissory estoppel as a basis for recovery in Florida. In doing so, we follow the decision of this court in *Prudential Insurance Co. of America v. Clark*, 456 F.2d 932 (5th Cir. 1972).

Moreover, we agree with the trial court that the conduct of appellant's agent, Mark Robinton, gives effect to the doctrine. Fulfilling the elements of promissory estoppel cited by the Supreme Court of Florida in *Mount Sinai Hospital of Greater Miami, Inc. v. Jordan*, 290 So.2d 484, 486 (Fla. 1974), Robinton made a promise which he should have reasonably expected to induce action or forbearance of substantial nature by appellee. Bordering on frivolous is appellant's argument that appellee could not reasonably rely on Robinton's promise because the manager of a branch office lacks authority to make such an oral pledge. Acting within the scope of his employment, Robinton was vested with at least apparent authority to extend such a promise, notwithstanding the contract clause barring verbal waiver or modification. *S. H. Kress & Co. v. Powell*, 132 Fla. 471, 180 So. 757 (1938); *Thompson v. Taylor*, 183 So.2d 16 (Fla. 1st DCA 1966); *Dade County Dairies, Inc. v. Projected Planning Co.*, 158 So.2d 565 (Fla. 3d DCA 1964). Robinton's promise to delay enforcement was a separate, enforceable promise and not a variance or modification of the brokerage contract. *See Prudential Insurance Co. of America v. Clark*, 456 F.2d 932 (5th Cir. 1972). Moreover, appellant through local agents customarily transacted business by telephone and later verified by a writing, as shown by appellant's sale of stock pursuant to appellee's telephone order and the subsequent signing of the brokerage agreement. Having benefitted from oral agreements transacted through local agents, appellant cannot now be heard to complain of failure to observe formalities. *See Southern States Fire Insurance Co. v. Vann*, 69 Fla. 549, 68 So. 647 (1915). Appellee relied justifiably and to his detriment on the agent's promise not to act on his account. Not to allow recovery, due to a stilted reading of *Tanenbaum*, would work an injustice against appellee. Accordingly, the judgment of the trial court is

AFFIRMED.