HUBBART, Judge
(dissenting).
The fatal flaw in the court’s reasoning is that the plaintiff Bacardi never agreed to the defendant Sanchis’ unilateral proposals for a repayment schedule on the subject loan, as contained in Sanchis’ letters to Bacardi dated February 18 and August 16, 1988,[1] much less gave any consideration for same. Indeed, Sanchis in effect withdrew these repayment proposals for lack of funds in his letter to Bacardi dated November 22, 1988,[2] following which Bacardi’s *835 counsel sent Sanchis a demand letter on November 28, 1988, stating “We must now insist that an adequate and appropriate plan for repayment be agreed upon” (R. 4); Sanchis did not respond to this letter and Bacardi subsequently filed suit. This being so, it is clear — contrary to the court’s holding herein — (a) that the parties through the aforesaid letters never agreed to a definite repayment schedule on the subject loan, (b) that these letters do not constitute a modification of the parties’ original loan agreement for lack of acceptance and consideration, and (c) that, at the very least, genuine issues of material fact exist on this record as to these issues; accordingly, the summary judgment herein based on San-chis’ default of the alleged repayment schedule must be 'reversed.[3]
Moreover, it is undisputed on this record that, at the time of the original oral loan agreement in 1986-87, a repayment schedule was never agreed upon by the parties. The plaintiff Bacardi conceded as much in his deposition:
“Q. Was this money supposed to be repaid?
A. Well, I didn’t really have such a close friendship with this gentleman to just give him as a present this type of money.
Q. I assume that means, ‘yes.’ What were the terms of repayment, if this money was supposed to be repaid? When was it supposed to be repaid?
A. I didn’t really get into that. I simply lent him the money. I did it on Mr. Regojo’s request.
Q. Okay. Was — then are you telling me that you’re not aware of any repayment terms?
[[Image here]]
[A]. I suppose that there was an arrangement, but I didn’t have any details about this arrangement. I simply trusted the friendship that existed between the two of them.”
(R. 116) (emphasis added). The defendant Sanchis basically agreed with the above account of the subject loan; he testified at his deposition that the entire loan arrangement was “open” in nature, that his obligation to repay the loan was entirely dependent on his financial ability to do so, and that the loan was not presently due because he was financially unable to repay the subject debt:
“Q. Were terms of repayment discussed?
A. Well, yes. I remember we spoke of some installments but always with the very open idea that if there was any *836 type of difficulty with those dates that other one[s] would be established.
[[Image here]]
Q. Tell me when you agreed to repay the loans.
A. Are you referring to which dates exactly I was obligating myself to repay?
Q. Yes, sir.
A. Well, some dates were set — established to calculate the interest and as a reference but totally open to the circumstances.
Q. Would you explain what that means. Did you have a date or not?
[[Image here]]
[A]. We had dates but dates which could be modified. I remember that it was every six months.
[[Image here]]
Q. When was the first date that you were required to make a payment?
A. The truth is that I don’t remember nor do I have any documents which — I don’t remember.”
[[Image here]]
Q. You have denied my Request for Admission that the full amount is due and owing, on what do you base that?
A. Well, the idea that it was an open loan and the loan is an open loan. If it wasn’t like that, I wouldn’t have ac- ■ cepted it.
Q. Open loan to you means that you pay it back whenever, maybe 20 years from now?
[[Image here]]
A. Keeping in mind that it’s a loan for a business that closed down and my interpretation is that loan was given for that business, yes.
Q. Is it your interpretation you pay the loan back when you can and if you can?
A. (Without interpreter) Yes.
Q. If you can’t ever pay the loan back, the loan is to be forgiven?
A. (Without interpreter) Yes.”
(R. 86, 90-91, 105-06) (emphasis added).
If a trier of fact accepts Sanchis’ testimony as stated above, it is clear under the established law of Florida that the subject loan is not presently due because Sanchis is financially unable to pay for same.[4] Plainly, a genuine issue of material fact exists on this record as to this issue which necessarily precludes the entry of a summary judgment in Bacardi’s favor. Florida East Coast Ry.
For the above-stated reasons, the final summary judgment under review should be reversed and the cause remanded to the trial court for further proceedings. I respectfully dissent from the court’s holding to the contrary.

. The February 18, 1988 letter acknowledges the aforesaid loan and states that Sanchis would send Bacardi "a liquidation plan [on the subject loan] before the end of April of the present year which will start at the end of 1989 and extend over a period of time not exceeding 18 months.” (R.38) The August 16, 1988 letter states that Sanchis would deposit $4,430 into Bacardi's bank account on August 29, 1988, in part payment of the subject loan, and that thereafter the "amortization plan" would be:
" 1) February 10, 1989 - $ 5,000
2) August 10, 1989 - $ 7,500
3) February 10, 1990 - $10,000
4) August 10, 1990 - $12,500
5) February 10, 1991 - $15,000
6) August 10, 1991 - $ 9,062"
(R.40). Bacardi never answered either of the above letters.

. This letter stated:
"From the time of my last letter, where I requested a restructuring of the payments, it has been impossible for me to get together the agreed upon amount. This is despite my having called upon all of the means available to me. Without wishing to make excuses, the truth is that some funds which I was expecting from Spain did not arrive within the time I had hoped.
[ ] Daniel, please rest assured of my great concern in living up to my word, for which I have several reasons. I would ask that you allow me to transfer $4,430 in U.S. dollars to you by the 10th of February, a date which would coincide with the payment of $5,000 U.S. dollars.
If necessary, I will put my house up for sale in order to obtain some cash. Do not doubt for a moment that my position is that of trying to delay repayment.
I ask that you accept my apologies and I appreciate your patience and understanding."
(R.42). The counterproposal by Sanchis for a $4,430 payment on the loan payable February 10, 1989 was ignored by Bacardi’s counsel in the *835 latter’s letter to Sanchis dated November 21, 1988, and was otherwise never agreed to by Bacardi. (R. 4).

. Mount Sinai Hosp. of Greater Miami, Inc. v. Jordan, 290 So.2d 484, 486 (Fla.1974) ("A mere gratuitous promise of a future gift, lacking consideration, is simply unenforceable as a nudum pactum.”); Florida East Coast Ry. v. Metropolitan Dade County, 438 So.2d 978, 980 (Fla. 3d' DCA 1983) (“It is a well settled rule that a summary judgment should only be granted in the complete absence of any genuine issues of material fact. The burden of the movant for summary judgment is not simply to show that the facts support its own theory of the case, but rather to demonstrate that the facts show that the party moved against cannot prevail. The moving party has the burden of conclusively showing the absence of genuine issues of material fact. If the existence of such issues or the possibility of their existence is reflected in the record, or the record raises even the slightest doubt in this respect the judgment must be reversed.") (citations omitted); Zane v. Mav-rides, 394 So.2d 197, 199 (Fla. 4th DCA 1981); Balter v. Pan American Bank of Hialeah, 383 So.2d 256 (Fla. 3d DCA 1980); Hammond v. Bicknell, 379 So.2d 680 (Fla. 2d DCA 1980); Wilson v. Odom, 215 So.2d 37, 39 (Fla. 1st DCA 1968) ("modification of a contract must be supported by consideration ... and cannot be made by one party to the contract without the assent of the other party”); Casa Marina Hotel Co. v. Barnes, 105 So.2d 204 (Fla. 3d DCA 1958), cert. denied, 109 So.2d 574 (Fla.1959).
It is, of course, true that the acknowledgment of the original debt as contained in Sanchis’ three letters to Bacardi republishes the original loan agreement for statute of limitations purposes and that such republication may itself be sued upon. Wassil v. Gilmour, 465 So.2d 566, 568 (Fla. 3d DCA 1985). The fact remains, however, that the original loan agreement, and therefore the republication thereof, contained no repayment schedule. Such a schedule is proposed for the first time in Sanchis’ August 16, 1988 letter and this proposal required both acceptance and consideration by Bacardi. Neither was forthcoming.

. Zane v. Mavrides, 394 So.2d 197, 199 (Fla. 4th DCA 1981) ("[A]n agreement to repay a loan when able creates a conditional promise to pay and that the creditor has the burden of demonstrating the debtor's ability in this regard."); Hammond v. Bicknell, 379 So.2d 680, 681 (Fla. 2d DCA 1980) (“Although we have been unable to locate any cases in Florida on the effect of such a promise on a contract, it appears that the majority view and the one which we think is the better rule is that this type of agreement creates only a conditional promise to pay so that the creditor is not entitled to recover on the promise unless the promisor is in fact able to pay the debt.”)