842 So.2d 1010 (2003)
SHORE HOLDINGS, INC., a Florida corporation, Appellant,
v.
SEAGATE BEACH QUARTERS, INC., a Florida corporation, Appellee.
Nos. 4D01-3082, 4D02-327.
District Court of Appeal of Florida, Fourth District.
April 16, 2003.
Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, *1011 and C. Brooks Ricca of C. Brooks Ricca & Associates, P.A., West Palm Beach, for appellant.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for appellee.

ON MOTION FOR REHEARING OR CLARIFICATION
JACOBUS, BRUCE W., Associate Judge.
We grant appellant's motion for rehearing or clarification, withdraw our previous opinion, and substitute the following.
Shore Holdings, Inc. ("Shore") appeals from a jury verdict and final judgment in favor of Seagate Beach Quarters, Inc. ("Seagate") and from a final judgment awarding Seagate attorney's fees. We reverse and remand the case.
This case involves protracted litigation concerning a failed real estate transaction. The real estate at issue consisted of two hotel buildings on the west side of A1A in Delray Beachthe Seagate Hotel ("Hotel") and the Beach Club ("Beach Club") located across the street on the ocean. In 1988, the Hotel and Beach Club were conveyed by a clerk's certificate of title to Rochester Community Savings Bank ("Rochester"). Rochester formed Shore to own and operate the property and hired Hudson Hotels Corporation ("Hudson") to manage it. Gerald Korn ("Banker Korn"), an officer of Shore, and employee of American Realty Finance Corporation, a division of Rochester, was responsible for finding a buyer for the property. Shore would sell the Hotel and Beach Club only as a package, although it was willing to deed them separately at closing.
Harvey Birdman and his partner, Herb Hirsch, wanted to purchase and develop the Hotel into a resort condominium, and then to sell the individual units. Consequently, Birdman and Hirsch formed Seagate and sought out partners interested in buying the Beach Club. On March 29, 1990, Seagate entered into a written contract with Shore to purchase the Hotel and Beach Club for $6,850,000. Seagate was unable to obtain the funds by the date of the closing. Pursuant to the cancellation provision of the March 29, 1990 contract, Seagate terminated the contract and Shore returned Seagate's deposit with interest, minus a cancellation fee.
On August 16, 1990, Seagate found a new joint venturer, the "Boinis Group" and together they entered into a new written contract (consisting of nineteen pages and thirty-six sections) with Shore to purchase the Hotel and Beach Club for $6.2 million in cash. The closing was originally scheduled for September 21, 1990, which was ultimately extended to October 3, 1990, pursuant to the contract. On October 1, 1990, Seagate informed Shore that it did not have the financial ability to close, but Shore refused to delay the closing. On October 3, 1990, Seagate did not attend the closing, contending that it had not received the closing statement three days prior to the closing as required by the contract. Later that same day, Seagate informed Shore that its new joint venturers, the "Nexus Group," wanted to buy the Beach Club and a meeting between the parties was arranged for that afternoon. At the afternoon meeting, Shore hand-delivered a letter to Seagate informing them that they were in default on the contract and specifying that the meeting on the afternoon of October 3, 1990, was not to be considered an extension of the prior contract.
On October 4-5, 1990, the Nexus Group sent additional financial information to Banker Korn. On October 9, 1990, Shore informed Seagate that the property was being sold to Hudson Hotels. On that same day, Seagate sent a letter to Shore *1012 declaring Shore in default of the contract for failing to furnish it with a closing statement and other documents prior to the closings on September 24, 1990, and October 3, 1990. On October 12, 1990, Shore signed a contract with Hudson and the Shore-Hudson real estate transaction closed on December 6, 1990.
Seagate thereafter filed suit alleging numerous causes of action, including breach of contract and promissory estoppel. Ultimately, the case proceeded to trial on the theories of breach of contract and promissory estoppel. The jury found that Shore had breached the contract, but the breach was not material; therefore, the jury awarded no damages on this count. Seagate's promissory estoppel cause of action was based upon oral representations allegedly made by Banker Korn assuring Seagate that Shore was prepared to convey the property to Seagate and would accept substantial changes in the financial terms of the transaction as well as the timing of the closure. Shore moved for a directed verdict at the close of Seagate's case, arguing among other grounds, that the statute of frauds prevents oral modification of a written contract. The trial court denied Shore's motion for directed verdict on this claim, and the jury found that Shore made a promise to Seagate upon which Seagate reasonably relied, suffering $1.5 million in damages as a result.
We find that the trial court erred in failing to direct a verdict in favor of Shore on Seagate's promissory estoppel claim. After the written contract expired on October 3, 1990, due to Seagate's failure to timely obtain requisite funding, no written contract existed between Shore and Seagate for the sale of the Hotel and Beach Club. The statute of frauds requires a written contract for the sale of real estate. See § 725.01, Fla. Stat. (1994). Therefore, there was no enforceable contract in existence to be modified by the parties.
Furthermore, any representation made by Banker Korn after the closing scheduled for October 3, 1990, was a representation governed by the statute of frauds, which would have required a writing to be enforceable. See Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 190 So.2d 777 (Fla.1966). Consequently, Seagate's claim for promissory estoppel does not survive the statute of frauds.
Even assuming arguendo that there was somehow a written contract for the sale of the real estate still in existence at the time Banker Korn made the oral representations, the statute of frauds prohibits the oral modification of a contract for the sale of land under the doctrine of promissory estoppel. See Wharfside at Boca Pointe, Inc. v. Superior Bank, 741 So.2d 542, 545 (Fla. 4th DCA 1999) (explaining that "[a]n agreement that is required by the statute of frauds to be in writing cannot be orally modified"). In Tanenbaum, the Florida Supreme Court specifically declined to "adopt by judicial action the doctrine of promissory estoppel as a sort of counteraction to the legislatively created Statute of Frauds." 190 So.2d at 779. The Florida Supreme Court cited with approval its holding in Yates v. Ball, 132 Fla. 132, 181 So. 341 (1938), that the statute of frauds should be strictly construed, and that great caution should be exercised "in the consideration of the advisability of ingrafting onto the law of this State a provision which may have the effect of nullifying the legislative will of the State as expressed by the inactment [sic] of the Statute of Frauds." Tanenbaum, 190 So.2d at 778. Additionally, the Florida Supreme Court in W.R. Grace & Co. v. Geodata Services, Inc., 547 So.2d 919 (Fla. 1989) expressed concern that the statute of frauds would be substantially changed if it *1013 approved the application of promissory estoppel under the facts of that case, stating that "it would ... become extremely difficult for parties to fully understand or be advised of their rights and obligations under written contracts." Id. at 925.
Therefore, we find that the trial court erred in failing to enter a directed verdict in favor of Shore on the action for promissory estoppel. While Shore raised numerous issues on appeal, our decision on the promissory estoppel claim is dispositive of the case, making review of the other issues unnecessary.
Reversed and remanded for entry of judgment in favor of Shore and for reconsideration of Shore's motion for attorney's fees on the breach of contract claim.
STONE and MAY, JJ., concur.