The MARK ANDREW OF THE PALM BEACHES, LTD., The Mark Andrew Operating Company, Inc., Flagler Life Care, Inc., Loretta Gardner, Robert Gardner and Green Fields and White Doors, Inc., Plaintiffs–Appellants,

v.

GMAC COMMERCIAL MORTGAGE CORPORATION, Defendant–Appellee.

No. 03–7801.

United States Court of Appeals, Second Circuit.

April 22, 2004.

J. Joseph Bainton, Bainton McCarthy LLC, New York, NY, for Plaintiffs–Appellants.

Steven S. Rand, Zeichner Ellman & Krause LLP, New York, NY, (Kenneth C. Rudd, on the brief), for Defendant–Appellee.

Present: LEVAL, CALABRESI, Circuit Judges, and RAKOFF, District Judge.*

### SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and it hereby is **AFFIRMED.**

█ In this contract action, plaintiffs-appellants seek to recover damages from defendant-appellee GMAC Commercial Mortgage Corporation ("GMAC") for its alleged failure to fund a $9 million loan for the construction of a luxury retirement community in West Palm Beach, Florida known as "The Mark Andrew." Plaintiffs filed suit in the United States District Court for the Southern District of New York, asserting breach of contract; promissory estoppel; fraud; negligent misrepresentation; bad faith and unfair dealing; and failure to exercise reasonable care in processing of a loan application. GMAC moved for summary judgment.

The district court (Koeltl, *J.*) granted summary judgment to GMAC on all of the claims. *The Mark Andrew of the Palm Beaches, Ltd. v. GMAC Credit Mortgage Corporation,* 265 F.Supp.2d 366 (S.D.N.Y.

---

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

2003). With respect to breach of contract, the court found that none of the documents to which plaintiffs adverted represented a written agreement to lend, as required by the Florida Banking Statute of Frauds. *See* Fla. Stat. § 687.0304(1) & (2). Absent such an agreement, the court reasoned, there was no enforceable contract, and therefore no breach of contract action could lie. As for promissory estoppel, the court concluded that plaintiffs' claim was barred because Florida law prohibits a party from recovering through promissory estoppel what they are otherwise prohibited from recovering by the Statute of Frauds. *See Shore Holdings, Inc. v. Seagate Beach Quarters, Inc.*, 842 So.2d 1010, 1012 (Fla.Dist.Ct.App.2003); *Coral Way Properties, Ltd. v. Roses*, 565 So.2d 372, 373–74 (Fla.Dist.Ct.App.1990) (per curiam). And the tort claims likewise failed because plaintiffs sought damages based on the same conduct and representations that formed the basis of their breach of contract claims. *See Puff 'N Stuff of Winter Park, Inc. v. Bell*, 683 So.2d 1176, 1177 (Fla.Dist.Ct.App.1996) (en banc).

On appeal, plaintiffs argue that: (1) various closing documents allegedly signed by GMAC, when read together, collectively constitute the necessary "agreement to lend;" (2) the Term Sheet, which set forth the terms that the two sides were working towards, represented an agreement to negotiate in good faith, and that this agreement was breached by GMAC; (3) the promissory fraud claim is based on promises other than the promise to loan money, and is therefore not barred; and (4) the fraud and other tort claims are based on

misrepresentations independent of the breach of contract, and may therefore lie.[1] They further assert that, at the very least, there are material questions of fact concerning the existence of an enforceable contract sufficient to survive summary judgment.

Having examined the record in this case, including the documents relied upon by plaintiffs and the testimony of the various participants in the aborted deal, we affirm the district court's decision with respect to the breach of contract, promissory estoppel, and tort claims, substantially for the reasons given by the court in its careful opinion below.[2]

■ In their appellate papers, plaintiffs claim that the district court did not fully consider their position that the Term Sheet constituted a contract to negotiate in good faith within the meaning of *Teachers Ins. and Annuity Assoc. of Am. v. Tribune Co.*, 670 F.Supp. 491 (S.D.N.Y.1987). *See also Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 71–72 (2d Cir.1989) (adopting and applying the *Teachers* approach). To the extent that this argument differs from plaintiffs' bad faith and unfair dealing claim, which the district court discussed and properly dismissed, and assuming *arguendo* that a *Teachers*-type duty exists under Florida law, we find that the Term Sheet is not a binding preliminary agreement of the sort described in *Teachers*. Plaintiffs also argue that the district court failed fully to consider two documents—the promissory note and the reconciliation sheet—in determining whether there was a written agreement to lend. Even drawing, as we must, all inferences

---

1. Plaintiffs previously abandoned their claims for anticipatory repudiation and duress.

2. On appeal, the plaintiffs also argue that they are entitled to the return of the unused portion of their good faith deposit, in the amount

of approximately $30,236.83. We need not decide the legal merits of this claim, or whether it was properly raised below, because the defendant's counsel conceded at oral argument that GMAC would return this sum to the plaintiffs.

in favor of the plaintiff, we conclude that these two documents do not contain such an agreement.[3]

We have considered all of appellant's remaining arguments and find them meritless. Accordingly, we AFFIRM the judgment of the district court.

---

3. With respect to their tort causes of action, we agree with the district court that the plaintiffs are prohibited from recovering on claims that "seek damages based on the same conduct and representations that are merely derivative of their claim for breach of an oral contract." *Mark Andrew*, 265 F.Supp.2d at 382. While some false statements and even

promises may be "separate and distinct" from agreements to lend, the representations adverted to here by plaintiffs "go[ ] to the heart of the agreement between the parties and [are] inseparable from the agreement to make the loan." *Puff 'N Stuff*, 683 So.2d at 1179 (Harris, *J.*, concurring).