John F. LAWRENCE, Plaintiff,

v.

THE RICHMAN GROUP OF CONNECTICUT, LLC, Defendant.

No. 3:03CV850(JBA).

United States District Court, D. Connecticut.

Dec. 12, 2005.

Brian P. Daniels, David R. Schaefer, Brenner, Saltzman & Wallman, New Ha-ven, CT, Ruth Ann Azeredo, Bowie, MD, for Plaintiff.

David A. Ball, Richard Slavin, Cohen & Wolf, P.C., Bridgeport, CT, Robert W. Turken, Bilzin Sumberg Dunn Baena Price & Axelrod, Miami, FL, for Defendant.

### Ruling on Defendants' Motion to Dismiss and/or for Summary Judgment [Doc. # 243]

ARTERTON, District Judge.

In this action plaintiff Lawrence—a stock broker licensed with the National Association of Securities Dealers ("NASD")—has asserted claims against The Richman Group of Connecticut, LLC ("TRGCT"), which is "a syndicator of real estate limited partnerships, styled as investment funds, created as vehicles for investment by institutional investors." Second Amended Complaint ("SAC") [Doc. # 27] at ¶ 6. Plaintiff claims that defendant violated a mutual exclusivity agreement between them by using other third-party brokers to market TRGCT's investment funds, thus depriving him of commissions to which he is entitled. Familiarity with the Court's earlier rulings in this action and in a related action with which this action has been consolidated,[1] as well as the factual background underlying both actions, is presumed.

Plaintiff's October 9, 2003 Second Amended Complaint alleges claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, tortious interference, fraud, negligent misrepresentation, and unjust

---

1. See Lawrence v. The Richman Group of Connecticut, LLC, 03cv850 (JBA), 2004 WL 2377140 (D.Conn. Sept. 30, 2004); Lawrence v. Richman Group Capital Corp., 358 F.Supp.2d 29 (D.Conn.2005); Lawrence v. Richman Group Capital Corp., 03cv850 (JBA), 2005 WL 1949864 (D.Conn. Aug. 11, 2005).

enrichment. *See* SAC, ¶¶ 53–81. This action (the "First Lawrence Action") was consolidated with a second action also filed by plaintiff involving essentially the same factual background (the "Second Lawrence Action") on September 14, 2004. *See* [Doc. # 98]. The Court dismissed plaintiff's claims in this First Lawrence Action for conversion, tortious interference, and fraud on September 30, 2004, leaving claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and unjust enrichment. *See* [Doc. # 117].

Subsequently, on March 4 and August 17, 2005, this Court dismissed all but one of the claims in the Second Lawrence Action, including claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *See Lawrence v. Richman Group Capital Corp.*, 358 F.Supp.2d 29 (D.Conn.2005); *Lawrence v. Richman Group Capital Corp.*, 03cv850 (JBA), 2005 WL 1949864 (D.Conn. Aug. 11, 2005) (on motion for reconsideration). Thereafter, the Court issued an Endorsement Order directing that briefing proceed on the motions to dismiss and/or for summary judgment on the remaining claims in

both the First and Second Lawrence Actions. *See* [Doc. # 242]. Briefing on the remaining claims in both actions ensued.[2] For the reasons that follow, the claims remaining in this action are dismissed.

## I. STANDARD [3]

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted); *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the

2. The remaining claims in this action are Count I for breach of contract, Count II for breach of the implied covenant of good faith and fair dealing, Count IV for negligent misrepresentation, and Count VII for unjust enrichment. The one claim for unjust enrichment remaining in the Second Lawrence Action has been dismissed, *see* [Doc. # 255].

3. Plaintiff's argument that the Court should treat the instant motion as one for summary judgment, and not for dismissal, because the Court's August 2005 Endorsement Order directed defendant to file a motion for summary judgment and because defendant has previously filed a motion to dismiss in this action which was granted in part and denied in part, is unpersuasive. Given the complicated procedural nature of this case, including consolidation and the filing of amended and second amended complaints in both underlying actions, as well as the procedural posture of this

action given the March and August 2005 rulings in the Second Lawrence Action which are relevant to the instant motion, the Court finds it appropriate to treat defendant's motion as one for dismissal under Rule 12(b)(6). *See Schwartz v. Compaqnie General Transatlantique*, 405 F.2d 270, 273 (2d Cir.1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment. A motion for summary judgment may be made solely on the pleadings, when it is so made it is functionally the same as a motion to dismiss or motion for judgment on the pleadings.") (internal quotation and citation omitted); *Katz v. Molic*, 128 F.R.D. 35, 38 (S.D.N.Y.1989) (a trial judge may treat a motion for summary judgment as a motion to dismiss for failure to state a claim, with or without notice to the parties).

pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## II. DISCUSSION

### A. Counts I and II: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

■ At the outset, the Court notes that plaintiff's claims at issue in the instant motion are largely predicated on allegations identical to those at issue in the Court's rulings in the Second Lawrence Action.[4] Accordingly, the Court incorporates by reference the reasoning and conclusions of its March and August 2005 rulings in the Second Lawrence Action, dismissing identical claims of breach of contract and breach of the implied covenant of good faith and fair dealing.

Defendant TRGCT argues that the Court's illegal contract determinations in the Second Lawrence Action dictate dismissal of plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation. Because this last claim was not asserted in the Second Lawrence Action, and thus not dismissed in the Court's rulings in that action, it will be analyzed below. With respect to the first two claims, because the factual allegations underlying these claims are essentially identical to those underlying plaintiff's claims in the Second Lawrence Action, the Court's conclusions in its earlier rulings

---

4. Specifically, like his complaint in the Second Lawrence Action, plaintiff's Second Amended Complaint here is based on oral and written communications between plaintiff and Stephen B. Smith, the Executive Vice President of TRGCT, concerning the sale of securities of certain funds of TRGCT and its affiliates (Smith is also the Executive Vice President of The Richman Group, Inc., The Richman Group Capital Corporation, and certain TRG Funds, all defendants in the Second Lawrence Action). Plaintiff alleges that in late 1997 or early 1998, he approached TRGCT with an investment fund concept known as the "Bank Fund," which "would enable institutional banking investors to invest in affordable housing located in specifically targeted geographic areas." SAC ¶ 7. Plaintiff further alleges that Smith, acting on behalf of TRGCT, agreed that "TRGCT would syndicate the Bank Fund if Lawrence could introduce to TRGCT institutional banking investors willing to invest an aggregate of not less than twenty million dollars ... to forty million dollars" and that if Lawrence were successful, he "would have the exclusive right to market to institutional banking investors nationwide any investment funds syndicated by TRGCT or its affiliates, including the Bank Fund." *Id.* at ¶ 11. Plaintiff alleges that after learning that a third-party broker/dealer—Beacon Hill Capital Corporation—had contacted certain institutional banking investors

concerning the Bank Fund, plaintiff demanded that TRCGT comply with its promise concerning exclusivity, and Smith and Lawrence thus created a "Registered Client" list "wherein the institutional banking investors that Lawrence contacted regarding investing in the Bank Fund were listed as Lawrence's clients." *Id.* at ¶¶ 16–18. Plaintiff alleges that subsequently, beginning in August 1998 and through early 1999, Lawrence and Smith came to an agreement whereby Lawrence was given the exclusive right to market TRGCT funds, including the Bank Fund, to his registered clients (with certain exceptions), and in return Lawrence "would perform services exclusively for TRGCT" and "would not introduce any institutional banking investors to any other syndicator." *Id.* at ¶¶ 21–29. Plaintiff alleges that in reliance upon the agreement, he "did not pursue opportunities to develop and market competing investment products with other syndicators," *id.* at ¶ 32, but that TRGCT breached its exclusivity agreement with plaintiff by using other brokers and representatives to solicit plaintiff's Registered Clients to invest in TRGCT funds. *Id.* at ¶¶ 37–40. Plaintiff alleges that as a result, Lawrence's commissions were reduced, eliminated, or returned, as part of the solicitation of Lawrence's Registered Clients by other brokers. *Id.* at ¶¶ 41–42.

dictate dismissal.[5]

Specifically, the contract plaintiff alleges between himself and TRGCT is illegal and thus void under federal securities laws. It therefore cannot provide the basis for a breach of contract action. The relevant registration requirement on which defendant's claim of illegality is based provides:

It shall be unlawful for any broker or dealer which is either a person other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered in accordance with subsection (b) of this section.

15 U.S.C. § 78o(a)(1). Lawrence acknowledges that he is not a registered representative of defendant TRGCT because

TRGCT itself was "not registered as a broker[ ] in accordance with all applicable federal and state laws."[6] *Lawrence v. Wilder Richman Sec. Corp.*, 04cv538 (JBA), Complaint [Doc. # 1], at ¶ 72.

Further, 15 U.S.C. § 78cc(b) provides that:

Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract. . . .

15 U.S.C. § 78cc(b). Thus, because the alleged contract described in plaintiff's Second Amended Complaint was for plaintiff to act as TRGCT's agent in soliciting investors for its funds, and Lawrence acknowledges that TRGCT was not registered as a broker-dealer, TRGCT argues that the performance of the alleged contract would not be legal, and is void.[7]

---

**5.** Plaintiff acknowledges "the likelihood of this Court ruling on [plaintiff's] arguments in the same manner as they were resolved in this Court's [earlier] ruling[s]," *see* Plaintiff's Opposition Br. [Doc. # 251] at 6 & n. 6, but reasserts and incorporates all arguments advanced in the Second Lawrence Action to "preserve an adequate district court record" in this First Lawrence Action.

**6.** As noted in the Court's March 2005 ruling in the Second Lawrence Action, in adjudicating a Rule 12(b)(6) motion, a district court may consider matters as to which judicial notice may be taken. *See Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999). Judicial notice is permitted of a fact "not subject to reasonable dispute in that

it is . . . capable of accurate and ready determination by resort to sources who accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b). Thus, the Court may take judicial notice of "prior pleadings, orders, judgments, and other items appearing in the Court's records of prior litigation that is closely related to the case sub judice." *Hackett v. Storey*, 04cv395 (JBA), 2003 WL 23100328, at *2 (D.Conn. Dec. 30, 2003) (citations omitted).

**7.** Plaintiff's argument that defendant's Section 78cc defense is time-barred lacks merit. First, the plain language of the statute applies only to "*actions* maintained in reliance upon th[e] subsection," *i.e.*, affirmative actions for rescission, not to defenses raised. *See* 15

In summary, plaintiff's argument that he complied with NASD Rule 3040, and that therefore his alleged contract with TRGCT is legal, fails for the reasons discussed in the Court's March and August 2005 rulings in the Second Lawrence Action. For plaintiff's contract to be enforceable, Wilder Richman Securities Corporation ("WRSC"), the entity through which Lawrence was a registered representative, must have provided express written consent for Richman to act on behalf of TRGCT, which plaintiff does not allege. *See Lawrence,* 358 F.Supp.2d at 36–40 (detailing plaintiff's argument and the requirements of Rule 3040); *Lawrence,* 2005 WL 1949864, at **3–5 (same). Notwithstanding his allegations that Stephen Smith and others with whom plaintiff had certain communications were acting on behalf of WRSC,[8] as held in the August 2005 ruling, the express written consent requirement of Rule 3040 "means correspondence expressly giving notice about and granting consent to a particular action, addressed to or from [WRSC], and correspondence with an agent acting on behalf of [WRSC] would suffice only if that agent expressly stated in writing that he was acting on [WRSC's] behalf for this purpose."[9] *Lawrence,* 2005 WL 1949864, at

U.S.C. § 78cc(b) (emphasis added). Additionally, the statute of limitations also applies only to claims of illegality based on violations of 15 U.S.C. § 78*o*(c)(1) or (2), which concern securities fraud, and not to the violation at issue here of § 78*o*(a)(1), which concerns broker-dealer registration requirements. *See id.; see also Guarantee Ins. Agency Co. v. Mid–Cont'l Realty Corp.,* 57 F.R.D. 555, 561 (N.D.Ill. 1972) (the statute of limitations provision of 15 U.S.C. § 78cc(b) "is only applicable to actions based on a violation of § 15(c)(1) of the 1934 Act) (the statute has since been amended to include § 15(c)(2));" *Livingston v. Weis, Voisin, Cannon, Inc.,* 294 F.Supp. 676, 679 (D.N.J.1968) (same). Additionally, as defendant argues, application of the Section 78cc statute of limitations to defendant's defense here would lead to absurd results in that an unregistered broker could simply wait to file suit on an illegal contract until after the expiration of the Section 78cc statute of limitations and thus preclude a defendant from raising the defense and effectively allow the broker to circumvent the federal registration requirements.

*Celsion Corporation v. Stearns Management Corporation,* 157 F.Supp.2d 942 (N.D.Ill. 2001), cited by plaintiff, involved such an affirmative action to void a contract pursuant to Section 78cc and not a defense, as here, and also noted that Section 78cc(b) does not provide any express statute of limitation for the rescission of a transaction for violation of the broker-dealer registration requirements of 15 U.S.C. § 78*o*(a), the same violation at issue in this action. *Carter Financial Corporation v.*

*Atlantic Medical Management, L.L.C.,* 691 N.Y.S.2d 529, 262 A.D.2d 178 (N.Y.App.Div. 1999), also cited by plaintiff, involved New York state law and appears to have erroneously dismissed a defense of illegality based on a violation of 15 U.S.C. § 78*o*(a) (registration requirements) as untimely, where the statute of limitations by its plain language applies only to actions brought for violations of 15 U.S.C. 78*o*(c).

8. Not only is plaintiff's claim that Smith was acting on behalf of WRSC insufficient to establish express written consent in compliance with Rule 3040, it is also internally inconsistent: in his Second Amended Complaint, plaintiff also alleges that "in his dealings with Lawrence from approximately late 1997 or early 1998 through the present, Smith acted on behalf of TRGCT." SAC at ¶ 10.

9. Plaintiff's resort to the affidavits of two NASD expert witnesses who purport to argue that plaintiff complied with NASD Rule of Conduct 3040 and that the contract between plaintiff and defendant did not violate the Rule or 15 U.S.C. § 78*o*(a)(1) is unavailing because plaintiff's arguments concerning the validity of the alleged contract and compliance with Rule 3040 were already rejected in the March and August 2005 rulings in the Second Lawrence Action. Furthermore, the proffered expert testimony is not competent for the purpose of espousing legal conclusions such as those offered here, *i.e.,* that the circumstances alleged by plaintiff did not violate Rule 3040. *See e.g., United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir.1991) ("As a

*4. Plaintiff makes no allegations which if proved could satisfy this requirement.[10]

■ Accordingly, the contract plaintiff alleges with TRGCT violates 15 U.S.C. § 78o(a)(1), is thus void pursuant to 15 U.S.C. § 78cc(b), and plaintiff's breach of contract claim (Count I) is dismissed. Additionally, plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Count II) is also dismissed because "'the existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing.'" *See Lawrence,* 358 F.Supp.2d at 40–41 (citing *Hoskins v. Titan Value Equities Group, Inc.,* 252 Conn. 789, 793, 749 A.2d 1144 (Conn. 2000)).

## B. Count VI: Negligent Misrepresentation

Defendant argues that because plaintiff's negligent misrepresentation claim "is merely his breach of contract claim with a different name," it must be dismissed. Defendant's Moving Br. [Doc. # 243] at 4. Plaintiff does not dispute that his negligent misrepresentation claim is based on the same Smith representations that form the basis of the illegal contract, and on TRGCT's alleged failure to act in accordance with those representations, but again relies on his arguments that the alleged contract is not, as the Court has twice before held, illegal.

■ In order to successfully plead a claim of negligent misrepresentation under Connecticut law, plaintiff must allege that defendant provided false information to plaintiff, which plaintiff justifiably relied on to his detriment.[11] Plaintiff's negligent misrepresentation claim incorporates the factual allegations that form the basis of his other claims, including his breach of contract claim, and further alleges that:

> Smith negligently made the aforesaid representations in that Smith should have known that TRGCT could not or would not act in accordance therewith and in that TRGCT negligently omitted to correct its earlier representations, even if not false at the time such representations were made, upon TRGCT failing to act in accordance therewith as set forth above, and TRGCT failed to disclose to Lawrence such circumstances as those circumstances occurred.

general rule an expert's testimony on issues of law is inadmissible"); *United States v. Scop,* 846 F.2d 135, 138–39 (2d Cir.1988) (holding that expert testimony stating that defendants "engaged in a manipulative and fraudulent scheme" and "fraudulent manipulative practices" constituted impermissible legal conclusions); *Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505, 508–11 (2d Cir.1977) (holding that expert testimony construing contract terms and giving conclusions as to the legal significance of various facts was impermissible, noting "[w]ith the growth of intricate securities litigation over the past forty years, we must be especially careful not to allow trials before juries to become battles of paid advocates posing as experts on the respective sides concerning matters of domestic law").

10. Unlike the complaint in the Second Lawrence Action, the Second Amended Complaint here does not contain any allegations concerning written correspondence between Lawrence and WRSC. In any case, even those general allegations in the Second Lawrence Action were held insufficient to meet the express written consent requirement of Rule 3040. *See Lawrence,* 2005 WL 1949864, at *3.

11. *See Updike, Kelly & Spellacy, P.C. v. Beckett,* 269 Conn. 613, 643, 850 A.2d 145 (Conn. 2004) (a defendant who, in its commercial or professional activities, "supplies false information for the guidance of others in their business transactions, [will be] subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if [defendant] fails to exercise reasonable care or competence in obtaining or communicating the information") (citing Restatement (2d) Torts § 552 (1979)).

SAC at ¶¶ 77–78. Plaintiff fails to plead justifiable reliance and acknowledges that the communications he had with Smith on which his negligent misrepresentation claim is based may not have been false at the time they were made.[12] Plaintiff's negligent misrepresentation claim is thus in essence a claim that TRGCT failed to comply with the terms of the illegal contract that was formed by the communications between plaintiff and Smith.

As the Court noted in its March 2005 ruling in the Second Lawrence Action, " '[i]t is unquestionably the general rule, upheld by the great weight of authority, that no court will lend its assistance in any way toward carrying out the terms of a contract, the inherent purpose of which is to violate the law. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged right directly springing from such contract.' " *Lawrence*, 358 F.Supp.2d at 40 (citing *Solomon v. Gilmore*, 248 Conn. 769, 785, 731 A.2d 280 (Conn.1999)). Plaintiff's negligent misrepresentation claim clearly is one "springing" from the alleged, and unen-

forceable, contract between plaintiff and defendant as the claim arises from the same alleged representations that form the basis of the alleged contract and stem from the same alleged noncompliance with those representations. Plaintiff cannot be permitted to circumvent the illegality of the contract by asserting what is essentially his breach of contract claim under the label of misrepresentation.[13]

## C. Count VII: Unjust Enrichment

■ The Court incorporates its analysis of plaintiff's unjust enrichment claim, dismissing that claim from the Second Lawrence Action. *See* [Doc. # 255]. As was the case with that claim, the alleged services provided to, and alleged benefits received by, defendant TRGCT that form the basis for plaintiff's unjust enrichment claim are only those directly related to the parties' performance or non-performance of the illegal and unenforceable contract. Plaintiff's allegation that "[a]s a result of TRGCT's conduct as aforesaid, TRGCT has been unjustly enriched," *see* SAC at ¶ 81, fails under the general rule that the illegality of the underlying contract "pre-

---

**12.** Absent allegations that the representations were false at the time they were made, plaintiff could not prove reliance, even if pled, because the representations would not become false or negligently uncorrected until the time of breach, at which point there could be no reliance.

**13.** *See Mars Electric, LLC v. Wooster Par, LLC*, No. DBDCV044000373S, 2005 WL 469327, at *3 & n. 2 (Conn.Super.Ct. Jan.28, 2005) (striking a claim for "misrepresentation" founded on the allegation that defendant breached an unenforceable oral agreement, noting "[a] party cannot avoid [a statutory bar] by labeling the cause of action as one to recover damages for fraud where ... proof of a contract, void under [the statutory bar] is essential to maintain the action" and that "claims of fraud, negligent misrepresentation and other claims were unenforceable because

each 'ha[d] as its nucleus an unenforceable oral contract' ") (citing *Weakly v. East*, 900 S.W.2d 755, 759 (Tex.App.1995)); *see also Mark Andrew of the Palm Beaches, Ltd. v. GMAC Comm. Mortgage Corp.*, 265 F.Supp.2d 366, 382 (S.D.N.Y.2003) (granting summary judgment where plaintiffs' negligent misrepresentation and fraud claims were "based on alleged oral representations [and] promises" that were "identical" to the allegations forming the basis of plaintiffs' breach of contract claim seeking to enforce an unenforceable contract, noting "plaintiffs are ... prohibited from recovering on tort claims, including claims for fraud and negligent misrepresentation, that seek damages based on the same conduct and representations that are merely derivative of their claim for breach of an oral contract"), *aff'd* 96 Fed.Appx. 750 (2d Cir. 2004).

cludes the recovery of the damages for breach and any other judgment aimed at enforcement of the tainted contract." *Regional Props., Inc. v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552, 564 (5th Cir.1982)[14] (holding that an unregistered broker who performed his part of an illegal contract could not recover for his services under either legal or equitable theories, because if he could recover his commission despite non-registration, then the contract-voiding provision in 15 U.S.C. § 78cc(b) would be rendered "a toothless tiger").

Accordingly, plaintiff's unjust enrichment claim (Count VII), which stems from the same factual allegations that show an illegal and unenforceable contract, is not viable and is dismissed.

## III. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss [Doc. # 243] is GRANTED and the remaining claims (Counts I, II, VI, and VII) in plaintiff's Second Amended Complaint [Doc. # 27] are DISMISSED. Because both complaints in this consolidated case have now been dismissed, this case will now be closed.

IT IS SO ORDERED.

---

**14.** Plaintiff again seeks to distinguish *Regional Properties*, which he unsuccessfully relied on in his opposition brief in the Second Lawrence Action. He now claims that *Regional Properties* bars only "quasi-contract" theories of recovery, and not claims for unjust enrichment, overlooking the fact that courts frequently use these terms interchangeably. *See Gagne v. Vaccaro*, 80 Conn.App. 436, 441, 835 A.2d 491 (Conn.App.Ct.2003) (" 'An unjust enrichment claim is an action in quasi contract.' ") (citing *Misisco v. La Maita*, 150 Conn. 680, 684, 192 A.2d 891 (Conn.1963)) (internal alteration omitted); *accord A. Secon-*dino & Son, Inc. v. LoRicco, 215 Conn. 336, 340, 576 A.2d 464 (Conn.1990) (oral contract failed to comply with the statutory written contract requirement, plaintiff contractor was not entitled to recovery in quasi contract for materials and services performed pursuant to oral contract, and plaintiff's quantum meruit and unjust enrichment claims were dismissed). Moreover, the principles discussed in *Regional Properties* are necessarily applicable to other equitable theories beyond quasi-contract because otherwise recovery under any such theory would effectively circumvent the prohibition in federal securities laws.