**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 31, 2023

Robert K. Beste, Esquire
Smith, Katzenstein & Jenkins LLP
1000 North West Street, Suite 1501
Wilmington, DE 19801

Kevin M. Gallagher, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

RE: ***Tygon Peak Capital Management, LLC v. Mobile Investments Investco, LLC, et al.,***
Civil Action No. 2019-0847-MTZ

Dear Counsel:

I write to resolve plaintiff Tygon Peak Capital Management's Motion for Partial Judgment on the Pleadings with Respect to the Annual Management Fee and Defendants' Exchange Act Affirmative Defense (the "Motion").[1] For the following reasons, the Motion is granted. I write for the parties.

## I. BACKGROUND[2]

Plaintiff Tygon Peak Capital Management, LLC ("Plaintiff" or "Tygon Peak")[3] is a private equity firm. Plaintiff's Verified Second Amended Complaint (the "Second Amended Complaint") stems from the 2018 acquisition (the "Acquisition") of Voice Comm, LLC, and ensuing disputes among Tygon Peak

---

[1] Docket Item ("D.I.") 140.

[2] I draw the following facts from the Verified Second Amended Complaint, available at D.I. 79 [hereinafter "SAC"], and Defendants Mobile Investments Investco, LLC and Mobile Investors, LLC's Amended Answer to Verified Second Amended Complaint, available at D.I. 136 [hereinafter, "Am. Ans."], as well as the documents integral to them, including those incorporated by reference. *See, e.g.*, *Jiménez v. Palacios*, 250 A.3d 814, 827 (Del. Ch. 2019) (footnotes omitted), *aff'd*, 237 A.3d 68 (Del. 2020).

[3] During many of the relevant events of this case, Tygon Peak was known as Tiger Peak Capital Holdings, LLC. To avoid confusion, I use "Tygon Peak" throughout, as the parties have.

and its coinvestors. As of the Acquisition, all of Voice Comm's equity was owned by defendant Mobile Investors, LLC ("MidCo"); eighty percent of MidCo was owned by defendant Mobile Investments Investco, LLC ("TopCo," and together with MidCo, "Defendants").

After the Acquisition closed, the parties entered into two relevant agreements. The first was TopCo's LLC agreement (the "TopCo LLC Agreement").[4] The second was a Management Services Agreement ("MSA") between Tygon Peak and MidCo.[5] The MSA provided that MidCo would pay, or cause Voice Comm to pay, Plaintiff a $300,000 annual management fee (the "Fee") in exchange for its services advising MidCo, its board, and its subsidiaries.[6] The Fee was to be paid in quarterly installments, and "is a fixed retainer, neither conditioned on nor varying with [MidCo]'s requests for services."[7]

Within a year of the Acquisition's closing, the parties' relationship began to sour. By July 1, 2019, MidCo stopped paying Plaintiff its Fee and sent Plaintiff a letter to that effect (the "July 1 Letter").[8] On July 4, Plaintiff responded (the "July 4 Letter"):

---

[4] SAC, Ex. B, available at D.I. 80.

[5] SAC, Ex. C [hereinafter "MSA"].

[6] *See id.* §§ 1(A), 2(B).

[7] *See id.* § 2(B); *Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC*, 2022 WL 34688, at *16 (Del. Ch. Jan. 4, 2022), *reargument granted in part on other grounds*, 2022 WL 414399 (Del. Ch. Feb. 10, 2022).

[8] SAC ¶¶ 74, 186; D.I. 153 [hereinafter "AB"] at Ex. 1. The July 1 Letter is incorporated by reference in the pleadings because it is specifically referenced in the Second Amended Complaint at paragraphs 74 and 186.

We respectfully disagree that [MidCo] is permitted to stop paying Tygon [Peak] the Annual Management Fee (as defined in the MSA) without violating [MidCo]'s covenant to pay under the MSA. However, we are willing to waive our right to receive payment in exchange for not being required to provide any services under the MSA until such time and upon such terms and conditions as are mutually agreed to by [MidCo] and Tygon [Peak]. Further, we acknowledge that neither [MidCo] nor Tygon is waiving any other rights under the MSA by virtue of this letter or by virtue of any other oral or written communication between [MidCo] and Tygon [Peak].[9]

On August 22, Tygon Peak's managing partner emailed a member of Defendants' boards about, among other things, the parties' dispute over the Fee (the "August 22 Email").[10] He wrote:

As we previously stated, we disagree with the Board's (which you control) and your decision to stop paying management fees owed to us under the management services agreement, and do not agree with your assertion that payment of those fees can be turned on and off at your leisure. Yet, instead of declaring you and the Board to be in default of that agreement, we have honored your request to stand down for the time being and not receive payment in exchange for not providing any services under that agreement. We have only done so in the spirit of trying to be a good partner to you, the company, the board and [nonparty] Derek [Weiss].[11]

---

[9] AB, Ex. 2 at 1 (formatting altered); Am. Ans. ¶¶ 74–75, 181. The July 4 Letter is incorporated by reference in the pleadings because it is specifically referenced and quoted in the Amended Answer at responses 74, 75, 181, 186, and 187.

[10] AB, Ex. 3; SAC ¶ 88; Am. Ans. ¶¶ 74–75, 88, 181, 186–187. The August 22 Email is incorporated by reference in the pleadings because it is specifically referenced and quoted in the Amended Answer at responses 74, 75, 88, 181, 186, and 187.

[11] AB, Ex. 3 at 1.

Plaintiff filed its first complaint on October 24, 2019.[12] Plaintiff filed the operative Second Amended Complaint on February 19, 2021, alleging nine counts.[13] On Defendants' motion to dismiss, Count III survived in full and Count IV survived in part. Count III alleges MidCo breached the MSA by failing to pay Tygon Peak the Fee.[14] Count IV alleges TopCo breached Sections 5.10 and 5.12 of the TopCo LLC Agreement.[15] The reasons for those counts' survival, and a more detailed history of this litigation, are set forth in my January 4, 2022, opinion (the "Motion to Dismiss Opinion").[16]

On April 21, 2022, Plaintiff moved for partial judgment on the pleadings as to Count III.[17] With Plaintiff's agreement, Defendants filed their amended answer to the Second Amended Complaint (the "Amended Answer") on July 21.[18] Plaintiff renewed its motion for partial judgment on the pleadings on October 4 (the "Motion"), and the parties briefed the Motion.[19] On December 12, I requested supplemental briefing on whether Defendants' affirmative defenses under the Securities Exchange Act of 1934 (the "Exchange Act") were time barred.[20] The parties filed supplemental submissions and I held a hearing on April 6, 2023.[21]

## II.   ANALYSIS

The Court will grant a motion for judgment on the pleadings under Court of Chancery Rule 12(c) only when there are no material issues of fact, and the movant

---

[12] D.I. 1.

[13] *See generally* SAC.

[14] *Id.* ¶¶ 179–187.

[15] *Id.* ¶¶ 188–195; *Tygon Peak*, 2022 WL 34688, at *16–23.

[16] *Tygon Peak*, 2022 WL 34688. The Motion to Dismiss Opinion is also available at D.I. 103.

[17] D.I. 126.

[18] D.I. 136.

[19] D.I. 140 [hereinafter "OB"]; AB; D.I. 161 [hereinafter "RB"].

[20] D.I. 163.

[21] D.I. 169; D.I. 171; D.I. 173; D.I. 174 [hereinafter "Hr'g Tr."].

is entitled to judgment as a matter of law.[22]  A motion for judgment on the pleadings requires the Court to consider not only the complaint or counterclaims, but also the answer, affirmative defenses, and any documents integral thereto.[23] "In determining a motion under Court of Chancery Rule 12(c) for judgment on the pleadings, a trial court is required to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party."[24]  "As on a Rule 12(b)(6) motion, however, a court considering a Rule 12(c) motion will not rely upon conclusory allegations of wrongdoing or bad motive unsupported by pled facts."[25]

The Motion seeks a final partial judgment that Plaintiff is entitled to the Fee.[26]  Plaintiff relies on the Motion to Dismiss Opinion's interpretation of the MSA:  the "Annual Management Fee is a fixed retainer, neither conditioned on nor varying with [MidCo's] requests for services."[27]  Indeed, there is no room to relitigate that legal interpretation:  it is the law of the case.[28]  The Motion to Dismiss Opinion explained that under that interpretation, Plaintiff had stated a claim for breach of the MSA.[29]

But Plaintiff's entitlement to judgment on that claim is subject to any valid

---

[22] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993) (citations omitted); Ct. Ch. R. 12(c).

[23] *Jiménez*, 250 A.3d at 827 (footnotes omitted).

[24] *Desert Equities*, 624 A.2d at 1205 (footnotes and citations omitted).

[25] *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000) (citation omitted).

[26] OB at 30–33.

[27] *Id.* at 3, 5 (quoting *Tygon Peak*, 2022 WL 34688, at *16); RB at 4–5, 8 (quoting *Tygon Peak*, 2022 WL 34688, at *16).

[28] *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 5278913, at *9 (Del. Ch. Sept. 10, 2015) ("The interpretation of a contract is a question of law." (collecting cases)); *Meyers v. Quiz-Dia LLC*, 2017 WL 76997, at *7 (Del. Ch. Jan. 9, 2017) (declaring the Court's interpretation of a contract on an earlier motion to dismiss ruling to be "law of the case" (citing *Zirn v. VLI Corp.*, 1994 WL 548938, at *2 (Del. Ch. Sept. 23, 1994))).

[29] *Tygon Peak*, 2022 WL 34688, at *15–16.

subsequently lodged affirmative defenses. Defendants "asserted a kitchen sink of [sixteen] affirmative defenses"[30] and press that six of them preclude judgment in Plaintiff's favor on Count III.

"An affirmative defense 'must be supported by pled facts' and a defendant cannot survive a motion pursuant to Court of Chancery Rule 12(c) based on "mere naked legal conclusions that do not plead facts supporting the viability of its affirmative defense."[31] "Generally speaking, affirmative defenses that amount to 'rhythmic incantation[s]' of the menu options of defenses set forth in Court of Chancery Rule 12 will not suffice to defeat a motion for judgment on the pleadings."[32]

### A. Prior Material Breach: Defendants' Third Affirmative Defense Fails.

Defendants' third affirmative defense asserts "Plaintiff's claims are barred, in whole or in part, because of Plaintiff's prior material breach of the [MSA]."[33] Defendants plead that "Tygon Peak failed to provide services in accordance with the [MSA]," and that the July 1 Letter was sent because of disputed "deficiencies with Tygon Peak's services."[34] Defendants assert that "[b]ecause there is a dispute of fact regarding whether Tygon Peak was in prior material breach, judgment on

---

[30] *Standard Gen. L.P. v. Charney*, 2017 WL 6498063, at *1 (Del. Ch. Dec. 19, 2017), *aff'd*, 195 A.3d 16 (Del. 2018). While Plaintiff refers to Defendants' "affirmative defense" based on the Exchange Act as a singular defense, Defendants raise four affirmative defenses based on the Exchange Act, two of which relate to the MSA. Am. Ans. at 84–86 (stating, in relevant part, the third, fourth, fifth, seventh, thirteenth, and fifteenth affirmative defenses); AB at 4, 10–11.

[31] *Leaf Invenergy Co. v. Invenergy Wind LLC*, 2016 WL 3566365, at *3 (Del. Ch. June 30, 2016) (quoting *Cypress Assocs., LLC. v. Sunnyside Cogeneration Assocs. Project*, 2007 WL 148754, at *18 (Del. Ch. Jan. 17, 2007)).

[32] *L-5 Healthcare P'rs, LLC v. Alphatec Hldgs., Inc.*, 2020 WL 6021536, at *8 (Del. Ch. Oct. 12, 2020) (quoting *GreenStar IH Rep, LLC v. Tutor Perini Corp.*, 2017 WL 5035567, at *8 & nn.73–74 (Del. Ch. Oct. 31, 2017)).

[33] Am. Ans. at 84.

[34] *Id.* ¶ 74.

the pleadings should be denied."[35]

"Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff."[36] "In order for a breach to excuse performance by a counterparty, the breach by the party seeking performance must be material. This Court has treated a prior material breach as an affirmative defense."[37]

Under the Motion to Dismiss Opinion's interpretation of the MSA, Defendants were obligated to pay the Fee regardless of whether they requested services from Tygon Peak.[38] For its part, "Tygon Peak's obligations to [MidCo] are still defined by the contours of Section 1(A) and any requests [MidCo] makes for management services. . . . Part of Tygon Peak's service is its constant obligation and readiness to respond to the [MidCo] Board's requests . . . ."[39] Defendants failed to plead that Tygon Peak's failure to provide services was

---

[35] AB at 22.

[36] *Standard Gen.*, 2017 WL 6498063, at \*21 (quoting *H–M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003)).

[37] *Id.* (citing *In re Mobilactive Media, LLC*, 2013 WL 297950, at \*13 (Del. Ch. Jan. 25, 2013), and *All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, at \*6 (Del. Ch. Aug. 9, 2004), *aff'd*, 880 A.2d 1047 (Del. 2005)).

[38] That opinion explained:

> Section 1(A) defines Tygon Peak's obligations, and Section 2(B) defines [MidCo's] obligations. Neither Section 2(B) nor Section 1(A) specifies that a request for Tygon Peak's services is a condition precedent on [MidCo's] obligation to pay. Rather, Mobile must pay "in advance." Section 2(B) indicates [MidCo's] payments are "in exchange" for Tygon Peak's services, which are in turn outlined in Section 1. Section 1(A) refers to services "at the request of [the [MidCo] Board]" to define the scope of Tygon Peak's obligations; that phrase does not condition [MidCo's] advance payments.

*Tygon Peak*, 2022 WL 34688, at \*16 (footnotes omitted).

[39] *Id.*

material under either Section 1(A) or any request for services.[40]  Their allegations are conclusory and therefore inadequate to preclude judgment in Plaintiffs' favor.[41]

### B.  Waiver:  Defendants' Fourth Affirmative Defense Fails.

As their fourth affirmative defense, Defendants state, "Plaintiff's claims are barred, in whole or in part, due to the doctrine of waiver."[42]  A party asserting waiver must demonstrate three elements:  "(1) that there is a requirement or condition to be waived, (2) that the waiving party must know of the requirement or condition, and (3) that the waiving party must intend to waive that requirement or condition."[43]  Defendants' waiver affirmative defense fails as a matter of law.

Here, the requirement subject to waiver is the requirement to pay Plaintiff the Fee.[44]  The parties dispute the third element:  whether Plaintiff intended to waive its right to receive the Fee.  Defendants argue Plaintiff's statements in the July 4 Letter and the August 22 Email evince Plaintiff's intent to waive the Fee.[45]  They do not.

In the July 4 Letter, Plaintiff wrote it was "willing to waive [its] right to receive payment in exchange for not being required to provide any services under the MSA until such time and upon such terms and conditions as are mutually agreed to by [MidCo] and Tygon [Peak]."[46]  Plaintiff went on:

---

[40] *See Standard Gen.*, 2017 WL 6498063, at \*21, \*23.

[41] *Id.*

[42] Am. Ans. at 84.

[43] *Bantum v. New Castle Cnty. Vo-Tech Educ. Ass'n*, 21 A.3d 44, 51 (Del. 2011) (internal quotation marks omitted) (quoting *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005)).

[44] SAC ¶ 75; *Tygon Peak*, 2022 WL 34688, at \*16.

[45] AB at 24–26.

[46] AB, Ex. 2 at 1.

> We also acknowledge that neither [MidCo] nor Tygon [Peak] is or will be in breach of the MSA by not providing services in the case of Tygon [Peak] or payment under the MSA in the case of [MidCo] in accordance with the terms of this letter, until the terms and conditions of recommencing any services under the MSA are mutually agreed to by [MidCo] and Tygon [Peak].[47]

The July 4 Letter does not demonstrate intent to waive: rather, it is a conditional suggestion to pause both Tygon Peak's right to payment and MidCo's receipt of any requested services. MidCo did not agree.[48] And Plaintiff affirmatively reserved its rights, stating that "neither [MidCo] nor Tygon [Peak] is waiving any other rights under the MSA by virtue of this letter or by virtue of any other oral or written communication between [MidCo] and Tygon [Peak]."[49] Standing alone, this reservation of rights defeats any waiver claim as a matter of law.[50]

The August 22 Email also fails to demonstrate an intent to waive. From the August 22 Email, I infer that MidCo had at some point requested that Tygon Peak "stand down for the time being and not receive payment in exchange for not providing any services under [the MSA]."[51] Defendants point to Plaintiff's statement that it had "honored" that request as proof of waiver.[52] But Defendants ignore the preceding sentence, in which Plaintiff makes plain that it "disagree[s] with [MidCo's] decision to stop paying management fees owed to [Plaintiff] under the [MSA], and do[es] not agree with your assertion that payment of those fees can

---

[47] *Id.* at 2.

[48] Am. Ans. ¶¶ 74–75, 181, 186–187 ("[MidCo] did not sign the July 4, 2019 letter . . . .").

[49] AB, Ex. 2 at 2.

[50] *E.g.*, *Pac. Ins. Co. v. Higgins*, 1994 WL 114898, at *8 (Del. Ch. Mar. 23, 1994); *Sarraf 2018 Fam. Tr. v. RP Holdco, LLC*, 2022 WL 10093538, at *8 n.105 (Del. Super. Oct. 17, 2022).

[51] AB, Ex. 3 at 1.

[52] *Id.*

be turned on and off at your leisure."[53]   As with the July 4 Letter, Plaintiff conditionally agreed that MidCo could pause payment in exchange for Plaintiff not providing any services, while retaining its position that unilaterally withholding the Fee was improper.   This is not a "voluntarily and intentional relinquishment" of its right to payment under the MSA.[54]

At the hearing on the Motion, Defendants offered a new argument:  Tygon Peak might have waived its rights to payment via as-yet undiscovered oral or other written communications.[55]  "A Court must examine what has been alleged in the pleadings, not what a [litigant] believes has been alleged."[56]  Affirmative defenses must be supported by pled facts.[57]   Arguments do not serve to amend the pleadings.[58]  Defendants did not plead that Plaintiff waived its right to the Fee in any oral or other unknown written communication.

The affirmative defense of waiver fails because the identified written

---

[53] *Id.*

[54] *Dirienzo v. Steel P'rs Hldgs., LP*, 2009 WL 4652944, at \*5 (Del. Ch. Dec. 8, 2009) (quoting *Realty Growth Invs. v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982)).

[55] Hr'g Tr. 39; *id.* at 40–41 ("So I'm not in a position to say that our waiver argument is entirely based on two letters, particularly when one of those letters talks about 'other oral and written communication[s].'   So that's why I believe we need further factual development to get at this question.").   Defendants did not point to any discovery requests seeking this information.  *See Kurz v. Holbrook*, 2009 WL 4682622, at \*6 (Del. Ch. Dec. 1, 2009).

[56] *Parseghian ex rel. Gregory J. Parseghian Revocable Tr. v. Frequency Therapeutics, Inc.*, 2022 WL 2208899, at \*9 (Del. Ch. June 21, 2022) (quoting *Gabelli & Co., Inc. v. Liggett Grp., Inc.*, 1983 WL 18015, at \*3 (Del. Ch. Mar. 2, 1983), *aff'd*, 479 A.2d 276 (Del. 1984)).

[57] *Cypress Assocs.*, 2007 WL 148754, at \*18 (citing *Speiser v. Baker*, 525 A.2d 1001, 1006 (Del. Ch. 1987)).

[58] *See Cal. Pub. Emps. Ret. Sys. v. Coulter*, 2002 WL 31888343, at \*12 (Del. Ch. Dec. 18, 2002) ("Arguments in briefs do not serve to amend the pleadings." (citing *Orman v. Cullman*, 794 A.2d 5, 28 n.59 (Del. Ch. 2002))); *In re MeadWestvaco S'holder Litig.*, 168 A.3d 675, 688 n.68 (Del. Ch. 2017) (same) (citation and internal quotation marks omitted).

correspondence does not support waiver, and Defendants did not plead Tygon Peak orally waived the requirement that the Fee be paid.

### C. Acquiescence And Estoppel: Defendants' Fifth And Seventh Affirmative Defenses Fail.

As their fifth and seventh affirmative defenses, Defendants raised acquiescence and estoppel.[59] "Estoppel and acquiescence are related doctrines of equity."[60] "Estoppel is the effect of the [1] voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might perhaps have otherwise existed, as against another person, who has [2] in good faith relied upon such conduct, and [3] has been led thereby to change his position for the worse."[61]

> The party claiming estoppel must demonstrate that: (i) they lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; (ii) they reasonably relied on the conduct of the party against whom estoppel is claimed; and (iii) they suffered a prejudicial change of position as a result of their reliance.[62]

Similarly, to prevail on an acquiescence defense,

> a defendant must show that (1) the plaintiff remained silent (2) with knowledge of her rights (3) and with the knowledge or expectation that the defendant would likely rely on her silence, (4) the defendant knew of the plaintiff's silence, and (5) the defendant in fact relied to her detriment on the plaintiff's silence.[63]

---

[59] Am. Ans. at 84.

[60] *Kahn v. Household Acq. Corp.*, 591 A.2d 166, 176 (Del. 1991).

[61] *In re Coinmint, LLC*, 261 A.3d 867, 896 (Del. Ch. 2021) (quoting *Kahn*, 591 A.2d at 176).

[62] *Nevins v. Bryan*, 885 A.2d 233, 249 (Del. Ch. 2005), *aff'd*, 884 A.2d 512 (Del. 2005).

[63] *Coinmint*, 261 A.3d at 896 (footnote omitted); *see also Klaassen v. Allegro Dev. Corp.*, 2013 WL 5739680, at *20 (Del. Ch. Oct. 11, 2013) (stating acquiescence is found where a party "has full knowledge of his rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained

Reliance is an element of both estoppel and acquiescence.

These affirmative defenses fail as a matter of law because Defendants failed to plead reliance, even in their Amended Answer.[64]  In their brief opposing the Motion, Defendants state:  "And as to the fifth element, [MidCo] relied on Tygon Peak's statements, and Tygon Peak's decision to cease sending invoices, to its detriment by believing that it was not required to remit any fees."[65]  In arguing Tygon Peak is estopped from enforcing its right to the Fee, Defendants claim: "Although the record is not fully developed, evidence will show that [MidCo] relied on these statements by, for example, not accruing [] management fees."[66] Neither of those sentences has any citations, let alone cites to the Amended Answer.  The Amended Answer simply does not allege Defendants relied on Tygon Peak's conduct or silence.  Defendants have unique knowledge as to whether they relied on Tygon Peak before refusing to comply with their obligations under the MSA:  they cannot remain silent on that element in their pleadings and then attempt to avoid judgment with conclusory briefing and a purported need for discovery into their own motivations.  And in any event, as explained, the July 4 Letter and August 22 Email are not fairly read to wholly release MidCo from its obligation to pay the Fee under the MSA.  Reliance on those statements would not have been reasonable.

Accordingly, Defendants' estoppel and acquiescence affirmative defenses

---

of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved," and "[a]s the disjunctive framing indicates, a defendant need only establish one of the bases for acquiescence" (emphasis omitted) (quoting *NTC Grp., Inc. v. W. Point-Pepperell, Inc.*, 1990 WL 143842, at *5 (Del. Ch. Sept. 26, 1990))).

[64] *Supra* note 31, and accompanying text; *cf. Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, 2016 WL 5243950, at *7 (Del. Ch. Sept. 22, 2016) ("Claims for fraud, fraudulent inducement, negligent misrepresentation, promissory estoppel and estoppel all require a plaintiff to plead that he justifiably or reasonably relied on the defendant's promise." (collecting cases)).

[65] AB at 29.

[66] *Id.* at 27.

fail as a matter of law.[67]

### D. The Exchange Act Defenses: Defendants' Thirteenth And Fifteenth Affirmative Defenses Fail.

Finally, I address Defendants' affirmative defenses based upon alleged violations of the Exchange Act:

> [Thirteenth Affirmative Defense:] In making or performing under the MSA, Plaintiff made use of the mails or any means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, securities. Because Plaintiff is not a registered broker-dealer, it made or performed under the MSA in violation of § 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1). Pursuant to § 29(b) of the Exchange Act, 15 U.S.C. § 78cc(b), the MSA is thus voidable by Mobile Investors, LLC and unenforceable by Plaintiff.
>
> . . .
>
> [Fifteenth Affirmative Defense:] Because the MSA constitutes an illegal contract under §§ 15(a)(1) and 29(b) of the Exchange Act, it is unenforceable under Delaware law.[68]

I will refer to these, as the parties do, as the "Exchange Act Defenses."

Defendants have raised the Exchange Act Defenses in an effort to render the MSA voidable or unenforceable.[69] Illegality is an affirmative defense on which

---

[67] *See Pilot Point Owners Ass'n v. Bonk*, 2008 WL 401127, at *2 (Del. Ch. Feb. 13, 2008) ("I therefore find that, because his post-May 24, 2005 reliance was not reasonable as a matter of law, defendant has failed to establish the necessary elements of an equitable estoppel defense as to his post-May 24, 2005 conduct."); *Mennen v. Wilm. Tr. Co.*, 2015 WL 1914599, at *35 (Del. Ch. Apr. 24, 2015) ("To rely on this defense, Jeff must prove the elements of acquiescence."), *aff'd sub nom. Mennen v. Fiduciary Tr. Int'l of Del.*, 166 A.3d 102 (Del. 2017).

[68] Am. Ans. at 85–86.

[69] On December 12, 2022, I asked the parties for supplemental briefing as to whether the Exchange Act Defenses were time barred under 15 U.S.C. § 78cc(b). D.I. 163. The

Defendants bear the burden of proof.[70]  The Exchange Act Defenses pose the question of whether the MSA is an "illegal contract" under 15 U.S.C. § 78o(a)(1) ("Section 15(a)(1)"), such that it is voidable under 15 U.S.C. § 78cc(b) ("Section 29(b)") and unenforceable under Delaware law.[71]  "Section 29(b) itself does not define a substantive violation of the securities laws; rather, it is the vehicle through which private parties may rescind contracts that were made or performed in violation of other substantive provisions."[72]

Section 29(b) provides in pertinent part that:

---

parties filed supplemental briefs, agreeing that the Exchange Act Defenses were not time barred under 15 U.S.C. § 78cc(b).  D.I. 169; D.I. 171.  I thank the parties for their submissions and conclude the Exchange Act Defenses are not time barred.  *E.g.*, *Azarden LLC v. Miller*, 2022 WL 951066, at *7 (D. Ariz. Mar. 30, 2022) ("The Court rejects Plaintiff's argument because the statute of limitations under § 78cc(b) applies only to an 'action' alleging a violation of § 78o(c)(1)–(2).  Here, Defendants have not raised any affirmative claims under § 78o(c)(1)–(2), which concerns the use of manipulative and deceptive devices.  To the contrary, the violation at issue here is § 78o(a)(1), which concerns broker-dealer registration requirements.  The Court therefore rejects Plaintiff's argument that § 78cc(b) bars Defendants' defenses." (citing *Lawrence v. Richman Grp. of Connecticut, LLC*, 407 F. Supp. 2d 385, 389 n.7 (D. Conn. 2005)); *Lawrence*, 407 F. Supp. 2d at 389 n.7 ("[T]he plain language of [Section 78cc] applies only to 'actions maintained in reliance upon th[e] subsection,' *i.e.*, affirmative actions for rescission, not to defenses raised.").

[70] Ct. Ch. R. 8(c); *Rothenberg v. Santa Fe Pac. Corp.*, 1992 WL 111206, at *4 (Del. Ch. May 18, 1992) (citing 31A C.J.S. *Evidence* § 104(b) (1964), and 29 Am. Jur. 2d *Evidence* § 129 (1967)).

[71] *Geronta Funding v. Brighthouse Life Ins. Co.*, 284 A.3d 47, 61 (Del. 2022) ("Under Delaware law, 'it is against the public policy of this State to permit its courts to enforce an illegal contract prohibited by law.'" (quoting *Della Corp. v. Diamond*, 210 A.2d 847, 849 (Del. 1965)).

[72] *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 206 (3d Cir. 2006) (citing *Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 206 n.4 (2d Cir. 1989)).

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, . . . [or] the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void.[73]

"[A] person can avoid a contract under [S]ection 29(b) if he can show that (1) the contract involved a prohibited transaction, (2) he is in contractual privity with the defendant, and (3) he is in the class of persons the Act was designed to protect."[74]

Whether the MSA involved a "prohibited transaction" depends on "whether [Plaintiff's alleged] securities violations are inseparable from" the MSA.[75] "[A] contract may be voidable under Section 29(b) if its performance in fact involved a violation of the Exchange Act."[76] "[T]he violation must be inseparable from the performance of the contract, rather than 'collateral or tangential to the contract.'"[77]

In *Berckeley Investment Group, Ltd. v. Colkitt*, the United States Court of Appeals for the Third Circuit held that "[i]f an agreement cannot be performed without violating the securities laws, the agreement is subject to recission under Section 29(b)."[78] *Berckeley* offered as an example *GFL Advantage Fund, Ltd. v. Colkitt*, in which the Third Circuit declined to void the agreement at issue because

---

[73] 15 U.S.C. § 78cc(b).

[74] *Reg'l Props., Inc. v. Fin. & Real Est. Consulting Co.*, 678 F.2d 552, 559 (5th Cir. 1982) (internal quotation marks omitted).

[75] *Berckeley*, 455 F.3d at 206 (citing *Reg'l Props.*, 678 F.2d at 559, and *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 201 (3d Cir. 2001)).

[76] *EdgePoint Cap. Hldgs., LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 59 (1st Cir. 2021) (citing *Reg'l Props.*, 678 F.2d at 560–61).

[77] *Id.* at 60 (internal quotation marks omitted) (quoting *Berckeley*, 455 F.3d at 206).

[78] *Berckeley*, 455 F.3d at 206 (citing *GFL Advantage Fund*, 272 F.3d at 202). The Third Circuit used the phrase "direct relationship" to describe this linkage. *Id.* at 205. Subsequent authority has adhered to *Berckeley*'s more fulsome description of the necessary link: it requires more than simply a "direct relationship." *EdgePoint*, 6 F.4th at 61 ("Our holding is consistent with *Berckeley* and *Regional Properties*." (citations omitted) (citing *Berckeley*, 455 F.3d at 205, and *Reg'l Props.*, 678 F.2d at 560)).

the "downstream short sales were neither connected to nor 'inseparable' from the agreement between the parties."[79]

In *GFL*, the appellee sought recission of two companies' notes under Section 29(b) because the appellant lender allegedly engaged in short sales of those companies' stock.[80] The appellee "insist[ed] that performance of the contracts involves a violation of securities laws because performance itself (exchange of shares and repayment of the loan plus interest) . . . supports [the lender]'s illegal short selling by giving [the lender] shares with which to cover the short sales."[81] The Third Circuit held that the lender's "alleged unlawful activity (*i.e.*, its short sales) is too attenuated from the parties' valid, lawful contracts (*i.e.* the . . . notes) or [the lender's] performance thereunder" and "conclude[d] that the notes were neither made nor performed in violation of any federal securities laws as is required for recission under Section 29(b)."[82]

Here, Defendants assert Tygon Peak committed alleged securities violations in facilitating investments in TopCo. Defendants argue that the MSA, an otherwise lawful contract by which Tygon Peak was available to perform management services for MidCo and its subsidiaries in exchange for the Fee, was consideration for Tygon Peak's role in attracting investors to TopCo. Defendants conclude the MSA is an illegal contract subject to recission under Section 29(b).

I disagree. Tygon Peak's alleged securities violations in soliciting TopCo investors are not "inseparable" from the "central purpose" of MidCo's MSA.[83] Tygon Peak can perform management services for MidCo under the MSA without violating securities laws. Any alleged unlawful activity in attracting investors for TopCo is too attenuated from the MSA and Tygon Peak's provision of services for MidCo. Defendants have failed to plead facts sufficient to demonstrate that the

---

[79] *Berckeley*, 455 F.3d at 206.

[80] *GFL Advantage Fund*, 272 F.3d at 199, 202.

[81] *Id.* (internal quotation marks and citations omitted).

[82] *Id.* (footnote omitted).

[83] *EdgePoint*, 6 F.4th at 61; MSA at recitals ("WHEREAS, subject to the terms and conditions of this Agreement, [MidCo] desires to retain [Tygon Peak] to provide certain management and advisory services to it . . . .").

MSA is voidable under Section 29(b).  The thirteenth affirmative defense fails.

Defendants' fifteenth affirmative defense asserts that because the MSA is an illegal contract, it is unenforceable under Delaware law.  As explained, Defendants have not demonstrated the MSA is an illegal contract under the Exchange Act.  And not all illegal contracts are unenforceable:  Delaware law is cautious about nullifying contractual agreements.[84]  "[C]ourts are averse to voiding agreements on public policy grounds unless their illegality is clear and certain.  Furthermore, courts exercise this authority with caution, and only in cases that are free from doubt."[85]  In short, litigants must do more than state a contract is "illegal" to render it unenforceable.[86]

---

[84] *Bunting v. Citizens Fin. Grp.*, 2007 WL 2122137, at *5 (Del. Super. June 29, 2007) ("Contracts may be unenforceable if they are either illegal per se or violate public policy." (footnote omitted)); *Balooshi v. GVP Glob. Corp.*, 2022 WL 576819, at *11 (Del. Super. Feb. 25, 2022) ("But not all 'illegal agreements are . . . automatically void' and some 'may not even be unenforceable.'" (quoting 1 Richard A. Lord, *Williston on Contracts* § 3:3 (4th ed.)), *aff'd*, 285 A.3d 839, 2022 WL 5052721 (Del. 2022) (TABLE)); *see Preferred Fin. Servs., Inc. v. A&R Bail Bonds LLC*, 2019 WL 315331, at *5 (Del. Super. Jan. 23, 2019) (noting a contract is illegal per se if it "violates the explicit mandate of a statutory provision," but then proceeding to consider a multitude of factors to determine if that same violative contract is unenforceable); *Bunting*, 2007 WL 2122137, at *5 (holding that for the defendant to succeed on its illegality defense, it "must establish that enforcement of the contract would violate public policy" (citing *Bank of Baltimore v. Auto's Plus*, 1994 WL 19937, *2 (Del. Super. Jan. 4, 1994)); *see also id.* (considering a defense of illegality to breach of an implied contract not to fire a notary for notarizing documents inconsistently with notary requirements); *Preferred Fin. Servs., Inc. v. A&R Bail Bonds LLC*, 2018 WL 587023, at *6–7 (Del. Super. Jan. 26, 2018) (considering a contractual arrangement designed to circumvent statutes regulating the bail bond business); *Della*, 210 A.2d at 849 (considering a contractual arrangement to circumvent a liquor licensing statute).

[85] *Bennett v. Lally*, 2014 WL 4674623, at *4 (Del. Ch. Sept. 5, 2014) (internal quotation marks and footnotes omitted).

[86] *See, e.g.*, *Lighthouse Behavioral Health Sols., LLC v. Milestone Addiction Counseling, LLC*, 2023 WL 3486671 (Del. Ch. May 17, 2023) (declining to find a contract illegal where the defendants did not carry their burden).

Defendants have not carried their burden. The MSA's alleged illegality is far from "clear and certain."[87] As explained, the MSA is not voidable under the Exchange Act because it is too far removed from Tygon Peak's alleged securities violations. The fifteenth affirmative defense fails.

## III.     CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. Within twenty days of this opinion, the parties shall confer and submit an implementing order reflecting a designation of this opinion as a partial final judgment under Court of Chancery Rule 54(b),[88] and a scheduling order to address the remaining claims in Count IV and any applicable defenses.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*

---

[87] *Bennett*, 2014 WL 4674623, at *4 (internal quotation marks and footnotes omitted).

[88] Plaintiff requested, should the Court grant the Motion, that the Court designate the judgment as a final judgment under Court of Chancery Rule 54(b). OB at 30–33. Defendants do not oppose this designation. AB at 52 n.27 ("Defendants expect that if the Court were to grant partial judgment on the pleadings, they would not oppose the designation of the judgment as a final judgment under Rule 54(b).").